## JULY TERM, 1864.

26  11
82  257
82  657
82  658

26  11
86  117

26  11
135  525,

26  11
136  62

## JOHN O'CONNOR *v.* GEORGE DINGLEY.

CONSTRUCTION OF WRITTEN CONTRACT.—O. and D. entered into a written contract, by which O. was to erect a building for D., and D. was to pay him certain amounts in instalments as the building progressed, and at its completion, for the balance due, O. was "to take the second party's (D.'s) note, (secured by real estate,) to bear interest at the rate of two per cent per month, and payable twelve months after date, or before, if the party of the second part wishes to do so." *Held,* that the words, "if the party of the second part wishes to do so," relate to the time when the note should be payable, and do not mean that he had the option of giving the note or not.

SPECIAL CONTRACT TO GIVE NOTE AND MORTGAGE — DEMAND NOT NECESSARY.— When by the terms of a written contract for the erection of a building, the party for whom it is to be erected, at the time of its completion, is to take the note of the party for whom it is to be erected, (secured by mortgage,) payable twelve months after date, for the balance due, it is incumbent on the party by whom the note and mortgage are to be given, to make a tender of the same, and not on the other party to demand them, and if the same are not tendered, the other party may bring his action without waiting the twelve months, the time the note was to run.

COMPLAINT FOR LABOR DONE UNDER SPECIAL CONTRACT.—Under the rules of pleading established by the code, the party to a written contract for the erection of a

building who has performed his part of it by the erection of the same, cannot bring an action against the other party who has failed to fulfil, for work and labor done and performed, but the complaint must aver the execution of the contract, its terms, the performance of the same on the part of the plaintiff, and the non-performance by the other party, and the damages thereby sustained. If, by the terms of the contract, the party who has failed to fulfil was to execute his note for the money due, payable at a future day, his failure to do so should be averred, for the ground of action against him is his failure to execute the note.

SAME.—In such case, if there has been any variation from the terms of the written contract, in the progress of the work, by consent of the parties, that fact should also be averred, and the performance of the contract as varied.

APPEAL from the District Court, Seventh Judicial District, Solano County.

The facts are stated in the opinion of the Court.

*Whitman & Wells,* for Appellant.

We submit that the action is prematurely brought, and cannot be sustained; that in any event it should not be maintained in its present form, but should be brought upon the contract.

If the contract be to pay money, it is due at any time or place, without demand.

If by a merchant to pay in goods, demand must be made where goods are.

If debtor contracts to pay in farm produce, creditor must demand payment at farm of debtor. (Greenleaf on Evidence, Sec. 609; *Lobdell* v. *Hopkins,* 5 Wend. 516.)

The case of *Moore* v. *Hudson River Railroad Company,* 12 Barbour, S. C. 159, was a case where a party had agreed to perform certain work on a railroad, and receive payment in the stock of the company at a specified time, and it was therein distinctly held that the defendants were not bound to seek the contractors and tender the stock, and that in such cases a demand, or its equivalent, was necessary.

It was, then, only necessary that the defendant should perform at a reasonable time and proper place, after notice; without such notice he could be in no default, and certainly a different place would be implied for the performance of such acts than that chosen by the plaintiff when he made his demand.

In Edwards on Bailments, p. 362, a special agreement had been made for repairs, payment to be made at different times as the work progressed, and the balance on completion, to be paid by bill at six months.

After proceeding to a certain extent, the parties deviated from the contract, and completed the repairs in a manner to which the former estimate did not apply.

Mr. Chief Justice Gibbs says:

"I have always understood the rule to be, that you may recover for work executed as for work and labor generally, if the terms contained in the written agreement are not of such a nature as to preclude a recovery otherwise than on the contract itself. It is every day's experience that a party may recover in the general counts for work and labor done under a special contract; but this case does not range itself within that class, for here are particular terms which render it impossible to recover under the common counts;" and further—"the plaintiff is entitled to recover on the general count for work and labor done at defendant's request, for the additional work; but as to so much as arises out of the special contract, I do not see how he can recover, since, *according to that contract, payment is not yet due.*"

Unless there had been an abandonment or rescission of the contract, or such a departure from it as would evidence the intention of the parties to treat it as at an end, then the action is prematurely brought, and plaintiff cannot recover.

This involves our second point, which is, that the action cannot be maintained in its present form, but should have been brought on the contract.

The facts that constitute the cause of action are not stated here.

The rule is laid down by Greenleaf on Evidence, Vol. 2, section 104:

"In case of a special agreement, a party can only elect to sue on the common counts when he has fully performed on his part, or when the contract has been abandoned by mutual consent, or has been rescinded and become extinct by some

act on the part of defendant, or when the contract, though not fully performed or in strict accordance with its provisions, is nevertheless beneficial to defendant, has been accepted and enjoyed by him."

The author goes on to say :

" If the mode of payment was any other than money, the count must be on the original contract, and if it was to be in money, and a term of credit was allowed, the action, though on the common counts, *must not be brought until the term of credit has expired."*

If such be the rule, the conclusions of law drawn by the Court, to the effect that there was such a departure from the terms of the contract as would authorize the suit in the form and at the time it was brought, are clearly erroneous. (2 Smith's Leading Cases, 41, *et seq.*)

*Swan & McMurtry,* for Respondent.

It is insisted by the appellant that these variations from the original contract do not in any manner affect the time and mode of making the eight hundred dollar payment. We think that the variations, taken in connection with other facts shown by the evidence, materially affect the note and mortgage clause in the original contract ; that, under the facts of the case, the plaintiff certainly had, as we contend, a right to treat the special contract as at an end, and commence his suit at the time he did.

As the law and evidence applicable to the first point made by appellant's counsel are so intimately connected with that of the second point, we will make our references to the first point in our argument on the second point.

In reference to the second point made by appellant's counsel—that "the action cannot be maintained in the present form, but should have been brought on the special contract"—we have only to refer to the following cases, decided by this Court : *De Boom* v. *Priestly,* 1 Cal. 206 ; *Reynolds* v. *Jourdan* 6 Cal. 108 ; *Adams* v. *Pugh,* 7 Cal. 150.

These cases decide that in a case like the present, a recovery not only *may*, but *must* be had (if had at all) on the implied contract.

In the case of *Reynolds* v. *Jourdan*, above cited, 6 Cal. 111, this Court said:

"Where the entire performance of a special contract has been prevented by one of the parties; or where its terms have been afterwards varied by the agreement of both parties, the action for the amount due for work and labor should be in the form of *indebitatus assumpsit*, and not upon the contract; but the contract may be introduced in evidence by either party, as an admission of the standard value, or as proof of any other fact necessary to the recovery, and should be allowed to go to the jury whenever it can aid them in attaining a sound conclusion."

And, as far as the form of the action is concerned in such cases, the same principle was afterwards affirmed by this Court in the case of *Adams* v. *Pugh*, above cited, (7th Cal. 150.) We know of no case wherein this Court has modified or overruled these decisions.

*E. A. Lawrence*, also for Respondent.

The suit could not have been maintained upon the original contract between the parties, because that had not been performed; the variance would have been fatal to the action. A recovery by O'Connor could only be had upon the *implied contract* in an action of *assumpsit;* and the contract which was rescinded could be given in evidence by either party only for the purpose of graduating the measure of damages, and *not for the purpose of controlling the argument or fixing the time or method of compensation or the rate of interest.* It could not be given in evidence as a substantive contract, *binding upon the parties,* but would be received like any other admission, as evidence tending to show the amount of compensation O'Connor is entitled to.

The Court find as a matter of fact that the parties to the

agreement "*disregarded*" the same after December 7, 1859. Probably it would have been better to have said *abandoned* instead of disregarded; still, the legal significance of the two terms is the same. This fact being found against appellant is conclusive, and if abandoned the agreement could not be given in evidence for any purpose. The Court so treated it, because it allowed interest on the judgment at the rate of ten per cent only, whereas the contract called for two per cent per month.

Even if there had been no abandonment of the contract, the term of the credit to be given has long since expired, and had prior to the entry of judgment, and the Court would not remit the party to a new action, when it is apparent he would be entitled to recover, but make such final disposition of the case now as will be equitable between the parties.

Again: Even if the parties had not abandoned and disavowed the contract, O'Connor had the right to rescind it, because Dingley refused to pay him or "to settle."

If the party who is to pay for work and labor in pursuance of a special contract be delinquent in the advancement of funds, the other party may take advantage of the omission and declare the contract at an end. (*Shaw* v. *Lewistown Turnpike Company*, 3 Pa. 445; 2 Parson's Conts. 191, note *m*; *Pribble* v. *Bottom*, 1 Williams, Vt. 249.)

By the Court, Rhodes, J.

The parties entered into a contract in writing, bearing date December 30, 1858, whereby O'Connor agreed to build for Dingley a stone building of given dimensions, for which Dingley was to pay him two thousand one hundred dollars; of which sum four hundred dollars was to be paid when the first story was completed; four hundred dollars when the second story was completed; and five hundred dollars when the third story and gables were completed; and the agreement continues as follows: "And the balance, being eight hundred dollars, the party of the first part agrees to take the

second party's note (secured by real estate) for the same, the said note to bear interest at the rate of two per cent per month, and payable twelve months after date, or before, if the party of the second part wishes to do so." Dingley agreed to board O'Connor's workmen, but subsequently it was agreed that O'Connor should board them, and that Dingley should pay him therefor three hundred dollars, and a certain amount of flour. Before the completion of the building, it was agreed between them that O'Connor should not build the gables, but the amount to be deducted therefor was not agreed upon. On the 7th of December, 1859, O'Connor ceased work on the building, claiming that it was completed according to the agreement, as varied by them in respect to the gables, and Dingley took possession of it; and they, disagreeing as to the amount to be allowed for the omission of the gables, did not settle, and nothing was done or said respecting the promissory note, which, according to the agreement, was to be given for a portion of the contract price. Suit was commenced by O'Connor in April, 1860, and judgment was rendered for him for the balance of the contract price.

The leading questions in the case arise upon that portion of the contract which provides for the execution of the note by the appellant to the respondent.

Upon the completion of the third story and the gables, the respondent was entitled to five hundred dollars in money, and the appellant's note secured by mortgage of real estate for the balance due him not exceeding eight hundred dollars—bearing interest at two per cent per month, and payable on or before one year after date.

The words "if the party of the second part wishes to do so," have relation to the time the note should be payable—that is, the appellant was to have the right to pay it before the expiration of the year—and do not mean that he had the option to give the note or not, as he might elect. It makes no difference, so far as the points we shall consider are concerned, whether the one hundred and fifty dollars, allowed

3

by the Court below, to be deducted from the contract price for the omission of the gables, are taken from the cash or credit instalments.    There can be no doubt—and it is so conceded by the appellant—that it was the duty of the appellant to have executed, and the respondent to have received the note.    By the terms of the contract, the appellant had no right to tender anything but the note, secured as provided for in the contract, nor had the respondent the right to demand anything in its stead.

The Court below found that the respondent did not demand, and the appellant did not tender, the note.    If it was incumbent on the respondent to make the demand, he had no cause of action against the appellant at the commencement of the suit; but if it was the duty of the appellant to make the tender, then a cause of action in some form did exist in favor of the respondent.    A demand would not be required, unless it would subserve some beneficial purpose relative to the note or the security, either in fixing the rights of the parties or in informing the appellant of some fact of which he was not bound to take notice.

Both parties knew the time of the completion of the work —taking as true the finding of the Court that the appellant received the building on the 7th of December—the date the note should bear, its time of maturity and the rate of interest; and they would be held to know the amount then due on the contract, and for which the note was to be given.    The appellant had the right to designate the real estate that was to serve as security for the payment of the note, but the respondent had no election in that respect—he could simply accept, if it was sufficient, or object, if insufficient, as the security provided for in the contract.    No benefit would result to the appellant from the demand, and the relative situation of the parties would not have been changed or more clearly defined upon its being made.    The duty of the parties in respect to the demand and tender was the same as it would have been if the agreement had been, that, upon the completion of the work, the appellant should assign to the respon-

dent a specified note and mortgage then held by the appellant, and there is no doubt that, in such case, it would as clearly have been the duty of the appellant to have delivered the note, without demand, as to have paid the money if it had then become due.

The appellant failed to perform his contract, and therefore he was liable to the respondent for the breach.

This is not the case of a contract where, for the services rendered, the party is required to pay a portion of the contract price, and has credit simply for the balance, but he has the credit upon his executing a specified note, with certain security, and not otherwise. If the Court should require the respondent—the note not being given—to delay his action until such time as the note, if it had been given, would have fallen due, it would thus deprive him of the security for his money, that he expressly contracted for, and, in effect, strike out one of the terms of the contract. The Court cannot make a new contract for the parties in whole or in part, and is not authorized to direct the respondent to give the appellant credit on different terms than were agreed upon by the parties in their contract.

The appellant's second point, that the action in its present form—which is for work and labor done and performed by the respondent for the appellant—cannot be maintained, but should have been brought upon the special contract, is well taken. Under the system of pleading at common law, it was the general rule that a party to a special contract, who had performed his part of it, and nothing remained to be performed under the contract but the payment of the money, could maintain general assumpsit to recover the amount due him on the contract. It was also a general rule, that while the special contract remains open and unrescinded, the party whose part of it is unperformed, in any respect, cannot sue in general assumpsit, but must sue in special assumpsit on the contract. To the latter rule there were several exceptions, and among them was the case where the special contract has been deviated from or modified by common consent and the

service has been performed : the party claiming compensation for his services must sue in general assumpsit.

The Supreme Court, in *De Boom* v. *Priestly*, 1 Cal. 206, affirmed the doctrine of the exception just stated, and that case was followed by *Reynolds* v. *Jourdan*, 6 Cal. 108, and *Adams* v. *Pugh*, 7 Cal. 150.

These rules and their several exceptions had their foundation in the rules of pleading as established and recognized at common law, and depended in but a small if any degree upon an essential difference in the real causes of action. It was the policy of the Courts from an early day, to keep the several classes of actions distinct, and to clearly mark the dividing lines between them. The rules of pleading in many cases were arbitrary, and in others the reason of the rule was almost too dim to be traced ; but whatever the grounds of the rules may have been, the Courts steadily adhered to them and applied them to the cases brought before them. In their application to the cases differing among themselves only in some particulars, the Courts were led into many refinements and subtle distinctions, which subserved no purpose but to preserve the rules of pleading, without any substantial benefit to the parties before the Court. The adjudications upon the distinction between trespass and case furnish familiar instances, and many others are found among the cases of the class of the one now before the Court. It would be difficult, indeed, for any one to assign any reason, except that such was a rule of pleading, why a party who has performed all his part of a special contract, could sue specially on the contract, and why a party to a similar contract, who has performed all his part according to the contract save in a single deviation made by consent, and fully performed, must resort to a different form of action.

The language of the Practice Act, that " there shall be in this State but one form of civil action," etc., unmistakably indicates that the Legislature intended to abrogate those rules of pleading having for their object the preservation of the sev-

eral forms of action, and the distinctive allegations employed in each class.

This is made apparent also by the provisions of the Act requiring the complaint, in all cases, to contain a statement of the facts constituting the cause of action in ordinary and concise language, thus destroying all mere technical rules and formal allegations.

There is no difficulty, in a case like the present, in stating the facts constituting the plaintiff's cause of action.  He can allege the execution of the contract, its terms, and subsequent modification or deviation made by agreement or consent of the parties, the performance of his part of the contract as altered or affected by the modifications or deviations, the non-performance by the other party of his part of the contract, and the damages thereby sustained by the plaintiff.  All the cases hold that in an action brought in general assumpsit, in consequence of a deviation from the terms of the contract made by consent of the parties, the plaintiff may, and should, introduce in evidence the contract, and if it has not been wholly lost sight of in the services as performed, the rates and terms of compensation fixed in the contract will be the measure of damages, so far as the same can be traced in the performance. He must, of course, prove the performance of all his part of the contract, except so far as the same has been deviated from by consent.  The contract therefore does constitute the basis of the action, and if there is any meaning in the rule that the evidence offered must correspond with the allegations, there can be no question that, according to the rules of the Practice Act requiring the facts to be stated, the contract should be set forth in the complaint, together with the necessary allegations of deviations, performance, etc., which the plaintiff must prove instead of the general allegation that the defendant is indebted to the plaintiff for work and labor, etc.  (*Green* v. *Palmer*, 15 Cal. 412 ; *Jerome* v. *Stebbins*, 14 Cal. 457.)

The Court below found as facts that the contract had been modified in respect to the boarding of the respondent's workmen, and that the parties had by consent deviated from the

contract by omitting the building of the gables, and found as a conclusion of law that "there was such a departure from the written contracts as would entitle the plaintiff to maintain his action in the form he has elected." The Court also found as a fact, that on and after the 7th of December, 1859, the parties "disregarded said agreements." The work on the building to be performed by the respondent was completed on that day, and the appellant then received the building, leaving nothing further to be done except the execution of the notes; and there is no evidence going to show that the parties disregarded the contract in that particular, or in any manner waived the execution of the note. The conclusion of law found by the Court would have been upheld under the rules of pleading at common law (though not, in our opinion, by the rules established by our Practice Act), if the part of the contract to be performed by the appellant had consisted merely of the payment of money. But he did not promise to pay in money at the time of the completion of the work. He undertook to execute his note, as specified in the contract, and the grounds of the action against him was his failure to execute the note according to the contract, and not his liability for the payment of money upon the completion of the work. It was held in *Musser* v. *Price*, 4 East. 147, which was a case in *indebitatus assumpsit* to recover the price of goods sold and delivered, to be paid for in three months by a bill of two months, that the action would not lie in that form, that the proper ground of the action was the non-performance of the agreement to pay in a bill of two months, and that the contract was broken by his not giving the bill. (See *Hoskins* v. *Duperoy*, 9 East. 498; *Dutton* v. *Solomson*, 3 Bos. & Pull. 582; *Brooks* v. *White*, 1 N. R. 330; *Ward* v. *Whitney*, 8 N. Y.; 4 Seld. 442; *Lutz* v. *Ey*, 3 E. D. Smith, 621; *Hanna* v. *Mills*, 21 Wend. 90.) In the last case Mr. Chief Justice Bronson says: "When goods are sold to be paid for by a note or bill payable at a future day, and the note or bill is not given, the vendor cannot maintain assumpsit on the general count for goods sold and delivered, until the credit has

expired, but he can sue immediately for a breach of the special agreement." The respondent was entitled to sue at the time he commenced this action, but he should have sued specially for the breach in failing to execute the note according to the contract.

Judgment reversed and the cause remanded for a new trial, with leave to the parties to amend their pleadings.

Mr. Justice CURREY expressed no opinion.