[L. A. No. 862.  In Bank.—March 17, 1902.]

## PEOPLE'S LUMBER COMPANY, Respondent, v. ALEX GILLARD et al., Appellants.

HIGH-SCHOOL DISTRICT—BUILDING CONTRACT—COMMON-LAW BOND— VALIDITY OF STATUTE NOT MATERIAL.—A contractor's bond given to a high-school district to secure the performance of a building contract which is in the form of a common-law bond, and does not refer to the statute providing therefor, though made in pursuance thereof, is valid and enforceable, without reference to the question of the validity or constitutionality of the statute. No statutory authority is necessary to give validity to such bond; and it is within the ordinary and prudential administration of the affairs of the school district for the board to require security for the faithful performance of the work, if there were no statute upon the subject.

ID.—REJECTION OF BIDS—ALTERATION OF PLANS BEFORE CONTRACT— FAILURE TO READVERTISE.—The fact that, after all of the bids were rejected, the plans were gone over and altered, so as to bring the cost of the building within a certain limit, and that the contract was thereupon let, and the bond given to secure its performance, does not show any alteration in the contract as let, or furnish any ground of defense to the sureties on the bond; nor were they discharged from liability on the ground that the board had no authority to make the contract without readvertising for bids.

ID.—CHANGES MADE PURSUANT TO CONTRACT—KNOWLEDGE OF OBLIGORS —PRESUMPTION.—Where the contract to which the bond was appended provided for changes by the board of trustees, the sureties on the bond must be presumed to have known of such provision, and to have agreed that they would be bound in case changes were made in the contract.

ID.—ACTION UPON BOND—EVIDENCE—ABANDONMENT OF CONTRACT—
INCREASE OF EXPENDITURE—MONEY ON HAND.—In an action upon
the bond, an offer to prove that when the contract was abandoned
the changes made by the board involved a large increase of expendi-
ture, and that the board had on hand when the contract was
abandoned more money than was used to complete the building,
was properly excluded as irrelevant. The plaintiff was at liberty
to pursue the remedy on the contractor's bond without first pursuing
the district as owner.

ID.— PLEADING — ORIGINAL CONTRACT — MODIFICATION — VARIANCE—
AMENDMENT.—The plaintiff cannot recover in an action on the
bond where it merely avers the original contract, without averring
the modification thereof made by the board, in pursuance of the
contract, and it is not sufficient without an amendment of the com-
plaint to show that the changes made were in the interest of the
contractors.

APPEAL from a judgment of the Superior Court of Ven-
tura County and from an order denying a new trial. D. K.
Trask, Judge.

The facts are stated in the opinion.

S. M. White, and J. S. Chapman, for Appellants.

Orestes Orr, E. S. Hall, and W. T. Williams, for Respond-
ent.

CHIPMAN, C.—Action on bond given by defendants Gil-
lard and Leary, as principals, and White, Hickson, and
Darancette, as sureties, to the board of trustees of the Ventura
High School District, upon a building contract. Defendants
Gillard, Leary, and Darancette made default. Plaintiff had
judgment for $1,787.16, from which and from the order
denying motion for new trial defendants appeal.

The complaint alleged that defendants Gillard and Leary
entered into a written contract with the above-named
trustees, by which they agreed to do the work, and furnish all
the materials, and complete the building for the sum of
seven thousand dollars; that defendants, as principals and
sureties respectively, executed their joint and several bond in
the sum of seven thousand dollars for the purpose above
stated; that the contract and bond were filed with the county
recorder of Ventura County, January 26, 1897, copies of

which are set out in the pleadings; that, relying on said bond, plaintiff sold to Gillard and Leary materials to the amount of $2,623.01, of which there remains unpaid $1,787.60; that the said contractors failed to complete the building, and ceased work thereon from and after July 17, 1897, while said building was in an unfinished condition and abandoned the work. The answer denied the allegations of the complaint, and averred that the bond was invalid. As an affirmative defense, the answer averred that the school trustees employed one Shaw as superintendent of construction, and empowered him to make any changes in the plans of said work; that with the sanction of the board he did make various changes which increased the cost more than $1,700; that the said contractors, Gillard and Leary, presented their claim to the board for extra work and materials and demanded payment, which was refused, and the board and contractors did not agree on the value of said extra work and materials; that the contractors demanded an arbitration, which was refused by the board, and thereupon they quit work, and the board proceeded to complete the building. It was also alleged that the building was not constructed on the plans and specifications originally adopted; that there was in the hands of the board when the contractors quit, of the funds provided for the construction, $2,650, and that it was then estimated that it would cost $722 to complete the building, but that the board actually expended on the construction, on different plans, the sum of $1,950, and, further, that the contractors were prevented from performing by the board of trustees. The answer admitted the execution of the bond, but averred that it was void and created no obligation on defendants. A general demurrer to the complaint was overruled.

1. It is urged that the demurrer should have been sustained,—1. Because section 1203 of the Code of Civil Procedure, as enacted by the act of March 23, 1893, is unconstitutional (Stats. 1893, p. 202); 2. The act being void the bond made pursuant to it is void; and 3. The bond being a statutory bond, the right to sue on it comes alone from the statute, and that the complaint must set forth the facts on which the statutory right of action depends, which it is claimed the complaint fails to do.

We do not think that these questions necessarily arise.

The bond no doubt was made pursuant to the statute. But it was voluntarily made, and may be enforced as a common-law bond, as it is substantially in form. It makes no reference to the statute, but recites, as is usual in bonds of that character, that the obligors "are held and firmly bound unto the board of trustees of the Ventura Union High School District, the owner, and to any and all persons who perform labor for, or furnish materials to, the contractors, Alex Gillard and D. M. Leary," etc. . . . "The condition of the above obligation is such, that whereas a certain building contract, which is filed herewith with the recorder of Ventura County, was on the twenty-ninth day of December, 1896, made and executed by . . . [naming the board and the contractors], and whereas the aforesaid penal sum of seven thousand dollars is intended and hereby made to insure to the owner the completion of all parts of the entire work or works, as set forth in the agreement (hereto annexed), and to inure to and for the use and benefit of any and all persons who perform labor, or furnish materials to the said contractors (in pursuance of said contract), or any person acting for them or by their authority. Now, therefore," etc., (then follows the usual covenant binding the obligors). It was competent for the parties to enter into such an obligation, whether the statute authorized it or not; and it is none the less binding because the statute requires it. No statutory authority is required to give validity to bonds of this character, and if there were no statute on the subject it would be quite within the ordinary and prudential administration of the affairs of the school district for the board to require some guaranty, by bond or otherwise, for the faithful performance of the work. The bond derives force from its provisions, and not from any statute. The argument of appellants is, that the act requiring the bond being void, it follows that the bond is void. It has been frequently held here that although the contract may be void for some failure to comply with the statute, the bond nevertheless may be enforced. (*Kiessig* v. *Allspaugh,* 99 Cal. 452; *Summerton* v. *Hanson,* 117 Cal. 252, and cases cited.) The reasons which led to the conclusion in the above cases would seem to apply here. (See, also, *Union Sheet and Metal Works* v. *Dodge,* 129 Cal. 390.)

2. It is claimed that the suit cannot be maintained because it is brought on a bond given to secure the performance of the original contract, and the evidence shows that the contract was altered after the bond was executed.

The action is brought on the bond attached to the original contract, and the complaint alleges that the bond was given to secure the performance of this contract, and there is no allegation that it was ever altered in any particular. The bond refers to this contract and no other.

Superintendent Shaw testified as to the alleged alterations in the plans: ''I examined my set at one time, with the set purported to be filed in the recorder's office, and the result of that comparison was, I believe, that there is some slight differences in the plans, but I cannot exactly remember what they were now.'' He testified that he was familiar with the plans on file and with the class of work contracted to be done, having himself been a builder. He was permitted,—rightly, we think,—over defendants' objections, to testify whether the work was done by the contractors in accordance with the plans as far as they went with the work. He testified that the quality of the work was in accordance with the contract, but that some changes in the sizes of timbers that went into the work were allowed in favor of the contractors, i. e. for example, some 2x4 studding in place of 2x6, and some 2x16 joists changed to 2x12; some windows with lighter glass than the contract called for were substituted.

It appeared that after the bids were all in for the building it was found that they exceeded the money provided,—to wit, seven thousand dollars,—and the bids were all rejected, and the plans were then gone over and certain changes made to bring the cost down to seven thousand dollars, and Gillard and Leary agreed to build the structure for that sum without further advertising, and thereupon the contract in question was made and the sureties then signed the bond. As to these facts it is sufficient to say that they do not furnish any ground of defense. The bond was executed with reference to the contract annexed to it, and not with reference to any advertised proposals. If the board had no authority to make the contract without re-advertising for bids, that fact would not discharge the sureties from their obligations under this bond.

Witness Costerison was called for defendants. He was the architect who prepared the plans for the schoolhouse in question. He assisted in making the changes to bring the cost down to seven thousand dollars. Defendants offered to prove by him that the foundation-wall was changed by direction of the board, after the contract and bond were executed, from five feet nine inches in height to eight feet nine inches; that other changes were made after the bond was given; that the contractors constructed the building as far as they went according to these changes, and that the changed plans made the building cost seventeen hundred dollars more than it would have cost according to the plans agreed upon and filed; that all these changes were made after the bond was given, and were just such changes as are alleged in the answer; that the cost of the. building, in connection with these changes, was at least seventeen hundred dollars greater than it would have been to have constructed it according to the plans so filed. Defendants also offered to prove that the board had on hand $2,650 when the contractors abandoned the contract, and it was estimated that the building could have been completed according to the then plans and specifications for seven hundred and twenty dollars, and that it would not have cost any more than that sum to complete the building according to the plans as filed. Proof was also offered that it cost the district $1,950 to complete the building after the contractors quit work. The court excluded all evidence on these matters as irrelevant and immaterial. Defendants claim that this was error (citing *Victor Sewing Machine Co.* v. *Scheffler*, 61 Cal. 530; *Daley* v. *Russ*, 86 Cal. 114). Plaintiff contends that it was not claimed that it had knowledge of any changes in the contract, without which it could not be affected thereby; that plaintiff sold the material to the contractors on the faith of the bond; that the bond refers to the contract which later is to be construed with it; and that the contract authorized changes to be made. The clause referred to is as follows: "Third. Should the said board of trustees at any time during the progress of said building request any alterations, deviations, additions, or omissions from the said contract, specifications, or plans, they shall be at liberty to do so, and the same shall in no way affect or make void the contract,

but will be added to or deducted from the amount of said contract price, as the case may be, by a fair and reasonable valuation." There is still further provision that, "in case the contractors refuse or neglect to provide materials or workmen, the board may supply the same and finish the work," and the expense shall be deducted from the amount of said contract price.

It seems to be clear enough that the sureties on the bond must be held to have agreed that they would be equally bound in case changes were made in the contract within the scope of the provisions in the contract above referred to. The contract was referred to in the bond, and its provisions must be presumed to have been known to the obligors of the bond. Nor do we think it was any defense to show that the board had funds on hand, more or less, at any given time. Plaintiff could look to the bond without first pursuing the owner.

The only question is whether plaintiff can recover on the complaint as it stands if it be made to appear that the contract was materially changed after the bond was given. The cases cited by appellants are to the effect that having declared on the original contract the plaintiff would have been non-suited on proving that the work was done under a modification or different contract. There was some evidence that the contract was changed as to the dimensions of certain timbers. Plaintiff submitted evidence tending to show that the plans were substantially carried out, and the changes mentioned were in the interest of the contractors, and hence in the interest of defendants. But defendants pleaded other material changes and offered to prove such changes. If in fact the contract was modified, as defendants claimed, it would show that the complaint relies upon a different contract from that which was in fact followed in doing the work, and hence the action in its present form could not be maintained. There would have to be an amendment to the complaint to conform to the facts. It was so held in the cases cited on what seems to be abundant authority. The defendants had the right to show that the original contract referred to in the complaint was not the contract under which the work was done, and it is no answer to the rule of

pleading that, even if the complaint had alleged the modifications, the defendants would still have been liable under the provisions of the contract above quoted. (See *O'Connor* v. *Dingley,* 26 Cal. 11.)

In the present case there is no difficulty in stating the facts constituting the cause of action. Plaintiff could have alleged the execution of the contract, its terms, and subsequent modification or deviation in accordance with the permission given in the contract, the performance of the contract, so far as it was performed, abandonment by the contractors, the subsequent completion of the building by the school district, the breach of the bond and the damages thereby sustained. As was said in the case last cited, "If there is any meaning in the rule that the evidence offered must correspond with the allegations, there can be no question that, according to the rules of the Practice Act requiring the facts to be stated, the contract should be set forth in the complaint, together with the necessary allegations of deviations, performance, etc., which the plaintiff must prove, instead of the general allegation that the defendant was indebted for work and labor," etc. *Victor Sewing Machine Co.* v. *Scheffler,* 61 Cal. 530, is in point, and was a suit on a bond, as is the present case, and the principle laid down above was there applied. In that case the bond was given to secure the faithful performance of an agreement of one Lonsdale with plaintiff. It appeared at the trial that some changes had been made in the contract after the bond was given. The action was on the bond, and it was alleged that the breach arose because of Lonsdale's failure to keep the original contract. The court said: "It necessarily follows that plaintiff cannot recover damages for non-performance by Lonsdale of the conditions of the original agreement, upon which, and the non-performance by Lonsdale of the conditions of which, plaintiff alone counts in his complaint. Even if it should be admitted that the change in the contract between plaintiff and Lonsdale was one contemplated by the wording of the bond, plaintiff could not recover upon allegations of the terms of the original contract, and of non-performance of its conditions by Lonsdale. His complaint should have set forth the substituted or modified agreement."

The judgment and order should be reversed, with leave to the parties to amend their pleadings should they be so advised.

Gray, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed, with leave to the parties to amend their pleadings should they be so advised.

Henshaw, J.,    McFarland, J.,    Van Dyke, J.
Garoutte, J.,    Harrison, J.