[S. F. No. 5867. In Bank.—August 26, 1912.]

HYMAN WOLF and ISAAC WOLF, Respondents, v. AETNA INDEMNITY COMPANY OF HARTFORD, CONNECTICUT (a Corporation), Defendant and Appellant, and B. W. LATTIMORE, Defendant.

BUILDING CONTRACT—LIABILITY OF SURETY ON BOND OF CONTRACTOR—PREMATURE PAYMENT OF CONTRACT PRICE—FINDING THAT BUILDING WAS ENCLOSED—EVIDENCE.—In an action by the owner to enforce, as against the surety, a bond given by a contractor to insure the performance of a contract for the erection of a building, in which the surety interposed the defense that it was discharged from liability by reason of a premature payment by the owner of an installment of the contract price, which the contract provided should be made when "the entire frame of the building is up, building enclosed and roof on," and which was made on a certificate of the architect stating that the amount was due, as required by the contract, it is held that a finding that the building was "enclosed" at the time of the payment is sufficiently sustained by evidence.

ID.—PAYMENTS MADE TO THIRD PERSONS WITH CONSENT OF CONTRACTOR. As against such surety as well as against the contractor, payments of the contract price made by the owner, with the free and voluntary consent of the contractor, directly to various subcontractors, materialmen, and labor claimants, are in legal effect payments to the contractor.

ID.—FINDING—REASONABLE COST OF COMPLETING BUILDING—EVIDENCE.—Notwithstanding a conflict in the evidence, the finding as to the reasonable cost of the material and labor necessary to complete the building, after the abandonment of the work by the contractor, is held to be sufficiently supported by the evidence to prevent interference therewith on appeal.

ID.—DIFFERENCE IN SIZE OF COMPLETED BUILDING—MISTAKE OF WORKMAN—WANT OF KNOWLEDGE OF OWNER—SURETY NOT DISCHARGED—FINDING.—Any difference in respect to the dimensions of the building actually constructed, due solely to a mistake of those engaged in doing the work, without knowledge on the part of the owner that there was any departure from the plans and specifications, would not affect the liability of the surety. It is held, however, that the evidence was sufficient to support the finding that there was no substantial difference in the dimensions of the building as constructed and the building called for by the plans and specifications.

ID.—CHANGES IN WORK NOT AUTHORIZED BY CONTRACT—DISCHARGE OF SURETY.—Material changes in the plans and specifications not ex-

pressly authorized by the contract, or material changes authorized by the contract, made by the parties without following a particular method prescribed therefor by the contract, made without the knowledge or consent of the surety, would operate to discharge the surety on the bond of the contractor.

ID.—CHANGES AUTHORIZED BY CONTRACT—VERBAL AGREEMENT FOR CHANGES—WRITTEN AGREEMENT ONLY REQUIRED WHEN DEMANDED. Where such contract expressly authorized the owner to make alterations in the work, without in any way affecting the validity of the contract, and a provision thereof only required an agreement therefor to be in writing when the same was demanded by either the owner, contractor, or architect, alterations made in pursuance of a verbal agreement between the parties did not discharge the surety.

ID.—ACTION FOR BREACH OF CONTRACT—PROVISION THAT CHANGES SHALL NOT AFFECT CONTRACT—PLEADING—COMPLAINT BASED ON ORIGINAL CONTRACT.—Where the contract, in addition to authorizing such changes, expressly provided that "the same shall in no way affect or make void this contract . . . and this contract shall be held to be completed when the work is finished in accordance with the original plans, as amended by such changes, whatever may be the nature and extent thereof," it was proper for the owner, in an action upon the contractor's bond to recover damages caused by the breach of the contract in failing to complete the building, to declare upon the original contract, without alleging such changes as were made in the work by the contractor prior to his abandonment thereof. *People's Lumber Company* v. *Gillard,* 136 Cal. 55, [68 Pac. 576], in so far as it holds the contrary, is overruled.

ID.—INCOMPETENT EVIDENCE.—In such action, evidence is incompetent as to the amount of bids received by the contractor for certain materials to be used on the building, and as to an offer submitted by a witness to do all the work necessary to complete the building, after its abandonment by the contractor, for a specified sum.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

George F. Hatton, and Hartley F. Peart, for Appellant.

A. A. Sanderson, for Respondents.

ANGELLOTTI, J.—This is an action on a bond given by B. W. Lattimore, as principal, and the Aetna Indemnity Com-

pany of Hartford, Connecticut, a corporation, as surety, in
the penal sum of four thousand dollars, upon a building
contract. Lattimore, who was a party defendant, defaulted.
The case was tried as between plaintiffs and the surety de-
fendant, and judgment was given in favor of plaintiffs and
against the surety and Lattimore for four thousand dollars.
This is an appeal by the surety from the judgment and from
an order denying its motion for a new trial.

The complaint alleged the making of the building contract
by plaintiffs (the owners) and Lattimore, a copy of which
(exclusive of the plans and specifications according to which
the building was to be built) was annexed, the giving by Latti-
more and the surety of the bond in suit, a copy of which was
also annexed, that Lattimore began work under the contract
and was paid in accord with the terms of the contract on
account of the contract price of sixteen thousand dollars, the
first, the second, and third payments, aggregating eight thou-
sand five hundred dollars; that on or about July 20, 1908, he,
without fault on plaintiffs' part, ceased and abandoned work
under the contract, and refused to go on therewith; that plain-
tiffs notified the surety thereof and demanded that it assume
and complete the contract as provided in its bond, but that it
refused to do so; and that thereafter plaintiffs proceeded to
complete such contract and did complete it in accord with the
terms thereof at a necessary cost of twelve thousand dollars.
It was further alleged that Lattimore had failed to keep said
building free and clear of claims of lien, claims to the extent
of two thousand dollars having been recorded and being
charges against the same, but on the trial plaintiffs introduced
no evidence on this score and waived all claim against the
surety on account thereof. The trial court adopted, probably
because the findings were so prepared by counsel, the unsatis-
factory method of finding simply generally "that each and
all of the allegations of the plaintiffs' complaint are true and
are sustained by the evidence and that each and all of the
denials and allegations in the answer of the said defendant
The Aetna Indemnity Company are untrue and are not sus-
tained by the evidence." Clearly, in the respect just men-
tioned there is no evidence to sustain the findings, but, of
course, this fact is immaterial if the findings are sustained in
all other respects. The amount of the bond and, consequently,

the amount of the judgment is only four thousand dollars, which is less than the amount alleged to have been necessarily expended by plaintiffs in the completion of the contract, over and above the amount of the contract price remaining after making the three alleged payments to Lattimore.

It is claimed that the second and third payments by plaintiffs to Lattimore were prematurely made, and that the evidence was insufficient to support a contrary conclusion, with the result that the surety should be held discharged from liability. The contract provided in regard to the first three payments that the first payment, three thousand dollars, was to be made "when entire concrete foundation walls are in and second story floor joists are laid," the second payment, three thousand dollars, "when entire frame is up, building enclosed and roof on," and the third payment, two thousand five hundred dollars, "when entire building is brown coated." It was expressly provided therein: "that when each payment or installment shall become due, and at the final completion of the work, certificates in writing shall be obtained from the said architect, stating that the payment or installment is due or work completed, as the case may be, and the amount then due; and the said architect shall at said times deliver said certificates under his hand to the contractor, or, in lieu of such certificates, shall deliver to the contractor in writing, under his hand, a just and true reason for not issuing the certificates, including a statement of the defects, if any, to be remedied, to entitle the contractor to the certificate or certificates." The three payments were made respectively April 18, 1908, May 3, 1908. and June 20, 1908. Each was made on the certificate of the architect, stating that the same was due to the contractor. It is claimed that the evidence is not sufficient to sustain a conclusion that at the time of the second payment the building was "enclosed" within the meaning of the contract, the provision of the contract as to this payment being "when entire frame is up, building enclosed and roof on." The entire frame was up and the roof on at such time. There was ample evidence to sustain a conclusion that the sides and rear elevations were covered with the sheeting paper and rustic called for by the specifications, and that the Oregon pine sheeting called for on the front elevation had been put on. The plans and specifications required that rustic or ship-lap should be

put on the front elevation over the pine sheeting, and this had not been done, at least entirely, at the time of the second payment. Although the plans and specifications were in evidence in the lower court, they are not contained in the record on appeal, and we have no means of determining whether their provisions would throw any light upon the question what is meant by the term "building enclosed" in the provision that we have quoted from the contract, except so far as the testimony of Lattimore and the architect assist in that regard. Lattimore testified substantially that the "plans and specifications" required that the front should have both sheeting and rustic on at the time of such payment. There was no dispute that the specifications called for both sheeting and rustic on the front, and we think it is clear that this requirement is the whole basis of Lattimore's testimony that both should be on before the second payment should become due, for we know that neither plans nor specifications would ordinarily contain any provision as to the times when payments shall be made. On the other hand, the architect testified most positively that all the payments "were made in conformity with the plans and specifications and the terms of the contract." This was tantamount to saying that the building was "enclosed" within the meaning of the contract at the time of the second payment. With sufficient evidence as to the actual condition to warrant a conclusion that the sides and rear elevations were fully covered by rustic, and the front elevation by the Oregon pine sheeting, we are satisfied that it must be held there was enough in the testimony of the architect to sustain a conclusion that the building was "enclosed" within the meaning of that word as used in the contract, at the time of the making of the second payment. It is not disputed that the entire building was "brown coated" at the time the third payment was made, the objection as to such payment being the same as that in regard to the second payment, viz.: that the building had not then been "enclosed." What we have said in regard to the second payment disposes of this objection. There is nothing in *Bacigalupi* v. *Phoenix Building & Construction Co.*, 14 Cal. App. 632, [112 Pac. 892], in conflict with our conclusion herein.

It is further claimed that the finding that the third payment was made to Lattimore is not sustained by evidence. This claim is based on the fact that the amount thereof

($2,500) was divided among various subcontractors, material-men, and labor claimants. There was ample evidence to sustain the conclusion that these amounts were so paid in the presence of the contractor, and with his consent freely and voluntarily given, he putting his "OK" on each of said claims and giving his receipt to the plaintiffs for the full amount. In their reply brief, counsel for appellant practically admit that these facts are conclusive against the contractor, but seem to contend that the surety's rights were infringed upon by the payment to creditors of the contractor on this building, instead of to the contractor himself. But clearly this cannot be so. The money was due the contractor under the terms of the contract, to be paid to him or to whomsoever he chose to designate, and when plaintiffs paid it in accord with his expressed consent, freely given, the plaintiffs paid it to him.

It is claimed that the evidence was insufficient to support the conclusion that in order to purchase the necessary material and pay for the necessary labor to complete the contract, after it was abandoned by Lattimore, plaintiffs were obliged to expend and did expend the necessary sum of twelve thousand dollars. After the contractor had failed to go on with his contract, and the surety, after notification of his default, had failed to proceed with the work, as required by its undertaking, plaintiff proceeded with the work by day's labor, without making any effort to secure a contractor to complete the contract. They employed a superintendent who purchased all necessary material and employed the necessary labor. Vouchers were presented for all expenditures, and the total cost of completion according to the plans and specifications, including cost of superintendence, was shown to have been $12,-628.31. There is no claim that this amount was not actually expended in the completion of the contract. Admittedly, the testimony of the superintendent was to the effect that this expenditure was reasonable and necessary. Opposed to this was the testimony of several witnesses, as to their opinions of the amount necessary to complete the contract, one of them putting such amount at $7,491. The greatest difference between the amounts actually expended and those testified to by defendant's witnesses appears to have been in the matter of labor. So far as the item of mill work is concerned, the amount expended appears to have been less than any of the

estimates.  Undoubtedly, the testimony of these witnesses created a substantial conflict on the question, and it may be that if we were discharging the functions of a trial judge herein our conclusion as to the reasonable cost of completing this contract would differ from that of the learned trial judge. But we are satisfied that it cannot be held that his conclusion is not sufficiently supported by evidence.  The evidence is not such as to compel the conclusion that the cost would have been less had bids been called for and a contract awarded for the completion of the work.

The plans and specifications showed a building 120 feet in depth by 27½ feet in width.  Two witnesses for defendant, each of whom was a surety on an indemnity bond given to the surety company in this matter, testified that according to a measurement they made of the building after its completion it was 121 feet 7 inches in depth.  They testified that the measurement was made with a tape line fifty feet long.  The contractor gave no testimony on this point whatever, and there is nothing to indicate that anybody had any idea that a longer building was being constructed than that called for by the plans and specifications until such measurement was made by these witnesses.  In fact, at the time of the giving of the testimony, the allegation in this regard was that the building erected was about two feet less in length than was provided for by the plans and specifications, and the answer was amended after the giving of such testimony.  The testimony of witnesses for plaintiffs was positive to the effect that no change in the plans and specifications was ever suggested by anybody in this regard, and also that the building was constructed exactly according to the plans and specifications.  If there was any difference in this respect, it was evidently due solely to a mistake of those engaged in doing the work, without knowledge on the part of plaintiffs or their agent that there was any departure from the plans and specifications, and we do not see how such a situation could affect the liability of the surety.  But after an examination of the testimony on this matter, we do not feel that we would be warranted in holding that there is not sufficient support in the evidence for the conclusion of the trial court that there was no substantial difference so far as depth was concerned, be-

tween the building as it stood on the ground and the building called for by the plans and specifications.

The building contract contained the following provisions in regard to alterations, etc.:

"Eighth. Should the owner or the architect, at any time during the progress of the work, request any alterations or deviations in, addition to, or omissions from, this contract or the plans or specifications, either of them shall be at liberty to do so, and the same shall in no way affect or make void this contract; but the amount thereof shall be added to, or deducted from, the amount of the contract price aforesaid, as the case may be, by a fair and reasonable valuation. And this contract shall be held to be completed when the work is finished in accordance with the original plans, as amended by such changes, whatever may be the nature or extent thereof.

"Ninth. The rule of practice to be observed in the fulfillment of the last foregoing paragraph (eighth) shall be that, upon the demand of either the contractor, owner or architect, the character and valuation of any or all 'changes, omissions, or extra work, shall be agreed upon and fixed in writing, signed by the owner or architect and the contractor, prior to execution."

The following changes or departures in the plans and specifications were made by the contractor, Lattimore, in the doing of the work, after the character and valuation thereof had been agreed upon and fixed in writing, signed by the owners and the contractor, viz.: An extra stairway to basement apartment and more storage room to rear, for fifty dollars; changes and extra work involving seven extra clothes closets and labor thereon, one hundred and fifty dollars. These changes being authorized by the contract and being made in the manner provided in the contract, the liability of the surety cannot be held to have been affected thereby.

Certain other changes are claimed by appellant to have been made by the contractor at the request of the owner, at an aggregate cost of one hundred and thirty dollars, without compliance with the provisions of the ninth paragraph of the contract, which is quoted above, and it is contended that such departure from the contract had the effect of releasing the surety. It was shown that certain changes were made, the testimony being such as to force the conclusion that a change

was made in the location of a door in the basement, before it was framed in, and that twelve windows in kitchens were raised six inches, the size of the windows not being changed. It was also shown that there was certain extra work in taking up floors that had been laid to allow the plumber to put in the gas outlets, but there was no departure from the original plans and specifications in the completed work in this regard. There was testimony that the increased cost by reason of these various items was thirty dollars for the basement door change, fifty dollars for the raising of the windows and fifty dollars for the flooring work. As to none of these things was any writing signed by any of the parties.

It may be conceded that material changes in the plans and specifications not expressly authorized by the contract, or material changes authorized by the contract, made by the parties without following a particular method prescribed therefor by the contract, made without the knowledge or consent of the surety, would operate to discharge the surety on the bond of the contractor. But the difficulty with defendant's position here is that the building contract expressly authorized the making of such changes (see eighth paragraph above quoted), and the ninth paragraph, upon which it bases its claim, is applicable only where "contractor, owner or architect" demands the agreement or written statement showing the character and valuation of the "changes, omissions or extra work." The language of the provision is clear and explicit and admits of no other construction. The contract authorized such changes, and required a previous agreement and statement in writing as to value and character only when the same was demanded by one of the parties named, contractor, owner or architect. It may be that it was very unwise for the surety company to become surety on a contract drawn in this way, but that it is bound by the provisions of the contract we cannot doubt. The cases cited by counsel for appellant in this connection are all cases where there was a plain departure from the express terms of the contract in the matter of changes. It follows that there was no discharge of the surety on account of these changes.

We do not understand that any claim is made for a deduction from the amount of the judgment on account of the cost of these changes. If the whole amount thereof, together with

the amount agreed upon as to the value of changes agreed on in writing, which would make an aggregate of three hundred and thirty dollars, were to be charged against plaintiffs, it would still leave them entitled under the findings to more than four thousand dollars, the amount of the bond and the judgment thereon.

It is contended that even if all the changes were made in the manner provided for in the contract, "nevertheless the contract *as changed* should have been pleaded," and that as the complaint makes no mention of any such changes—alleges no modifications, it in fact alleges a "different contract" from that followed in doing the work, and cannot serve as a basis of recovery in this action and the judgment must be reversed. This claim is based on the case of *People's Lumber Co.* v. *Gillard*, 136 Cal. 55, [68 Pac. 576], which, it must be conceded, gives much support to the contention of appellant. But we are satisfied that the general rule upon which that case was decided, to the effect that the pleader can recover only upon the contract alleged and not upon some other and different contract, does not require a reversal under such circumstances as exist here. This action was upon the bond given by appellant. The only changes shown as to the contract between the owners and the contractor were the changes from the original plans and specifications already noted, as to which, as we have already seen, the contract expressly provided that "the same shall in no way affect or make void this contract . . . and this contract shall be held to be completed when the work is finished in accordance with the original plans, as amended by such changes, whatever may be the nature and extent thereof."

There was no new or substituted contract between the contractor and the plaintiffs by reason of such changes from the plans and specifications. The action was one for damages caused by the breach of the original contract, whereby the contractor had in effect agreed to construct the building according to the plans and specifications as they were at the time of the execution of the contract, amended by such changes as might be made in such plans and specifications by the parties during the progress of the work. The few small changes in the plans and specifications noted had all been made by the contractor before he ceased work upon the building,

and the alleged default of the contractor was solely in the matter of failing to go on with the work and complete the building, so that such changes were entirely immaterial as far as the matters involved in this action are concerned. It is therefore easy to understand why the framer of the complaint, in referring to the contract, made no reference to the fact that in certain small details the plans and specifications had been changed during the progress of the work by the contractor, and we are unable to see how such an allegation was at all necessary.

The cases cited in the opinion in *People's Lumber Co.* v. *Gillard,* 136 Cal. 55, [68 Pac. 576], as authorities sustaining the conclusion there reached, have no proper application to such a case as this. In *Victor S. M. Co.* v. *Scheffler,* 61 Cal. 530, the case principally relied upon, the action was upon a bond given to secure the faithful performance of his contract as an agent of the Victor Sewing Machine Company by one Lonsdale, to whom sewing machines were to be shipped on consignment for sale. There was no provision in the contract for any modification or change in the terms of the contract, but the surety in his bond agreed that certain changes might be made without affecting his liability. The contract between Lonsdale and the sewing machine company was subsequently changed in such a manner as to make a new and different contract between them, and the difference between the terms of the old and the new contract was such, it was held by this court, as was not permitted by the terms of the bond, with the result that the surety was discharged. The complaint was based squarely on the first or old contract and charged a breach thereof alone, and the court further held that even if the change in terms had not been such as to release the surety, still plaintiff could not recover in that action brought for breach of the original contract, "since plaintiff proved that the original contract had ceased to be in force prior to the alleged nonperformance of its conditions by Lonsdale." In *Daley* v. *Russ,* 86 Cal. 114, [24 Pac. 867], the action was for a commission for negotiating a loan, a written contract being alleged which was annexed to the complaint. Performance on his part of this contract by the plaintiff was alleged. The evidence showed affirmatively that the plaintiff had not performed his part of such contract. The court said: "We think

that the plaintiff failed to prove the case set forth in his complaint. . . . The evidence, therefore, did not show performance of the contract set forth in the complaint. And if the contract of the defendant amounted to a modification of the contract, it should have been declared on as modified.'' *O'Connor* v. *Dingley*, 26 Cal. 11, was an action in general assumpsit for work and labor, by a building contractor who had entered into a written contract with the owner which had been materially deviated from and modified during the progress of the work by common consent. The material question in the case was whether under our Practice Act, the exception existing at common law to the general rule requiring a party to a special contract which remains òpen and unrescinded to sue in special assumpsit on the contract and forbidding a suit in general assumpsit, to the effect that where the special contract has been deviated from or modified by common consent and the service has been performed, the party claiming compensation must sue in general assumpsit, was still in force. It was held that it was not, that the action must be upon the contract as modified, and that the general allegation in the complaint "that the defendant is indebted to the plaintiff for work and labor," etc., was not a statement of the cause of action shown by the evidence.

We think it obvious that none of these cases is applicable to such a case as is here presented, and that the objection of appellant, based on the authority of *People's Lumber Co.* v. *Gillard*, 136 Cal. 55, [68 Pac. 576], is without merit. In so far as the opinion in the latter case is opposed to our conclusions it is overruled.

There was no prejudicial error in sustaining the objection to the question asked plaintiff Hyman Wolf on cross-examination, whether he did not pay two hundred and fifty dollars of the third payment to the Doe Lumber Company instead of to the contractor. That he did so was fully shown by all the evidence, the only question being whether he did so under such circumstances as to make it, in fact, a payment to the contractor. This the court found on sufficient testimony was the fact. The objections to questions asked the contractor (Lattimore) as to the amount of certain bids received by him for the mill work, the marble and tile work, the glass work, and for the cornice and sheet metal on this building were

properly sustained. The proposed evidence was incompetent. For the same reason, the trial court properly sustained an objection to the question asked witness John Couglin, as follows: "After Mr. Lattimore ceased working on that building did you submit an offer to do all the work necessary to complete the building for the sum of $1,500.00?"

The judgment and order denying a new trial are affirmed.

Shaw, J., Sloss, J., Henshaw, J., Lorigan, J., and Melvin, J., concurred.