J. C. A. HILLER et al., Respondents, v. WILLIAM DAMAN et al., Appellants.

St. Louis Court of Appeals, May 5, 1914.

1. **BUILDING CONTRACTS: Action for Breach: Sufficiency of Evidence.** In an action for the breach of a building contract, evidence *held* to warrant a finding that the contractor had installed inferior mirrors in the bathrooms, justifying a recovery by plaintiff for the difference in value between the quality of mirrors called for in the contract and those installed.

Hiller v. Daman.

2. ———: ———: **Payment of Bills to Prevent Mechanic's Lien: Right of Recovery.** Under a building contract, providing that, if there should be any claim which might be established by a mechanic's lien after all payments had been made to the contractor, the latter should refund to the owner all moneys which he was compelled to pay in discharging such claim, the fact that there was a small balance due the contractor at the time the owner was served with notice of such a claim, would not preclude his recovering from the contractor the amount paid by him in settlement of such claim, in excess of such balance.

3. ———: **Extension of Time of Performance: Compliance with Contract Requirements.** Where a building contract provided that if the contractor was delayed in the prosecution or completion of the work, the time for the completion thereof should be extended for a period equivalent to the time lost, but that no such allowance should be made unless a claim was presented in writing to the architect within forty-eight hours after the occurrence of the delay, the contractor was not entitled to an extension of time because of matters causing delay, unless a claim was presented as required by such provision; and a delay in commencing work, due to the act of a third party in placing macadam on the lots, was such a delay as required the contractor to make such claim as a basis for an extension.

4. ———: ———: **Extra Work.** Where a building contract contemplated that, in the work of excavation, filled ground might be encountered, and fixed the prices for work in excavating it, the doing of such excavation was within the terms of the contract and was not such extra work as entitled the contractor to an extension of time for completion of the work.

5. ———: ———: **Compliance with Contract Requirements: Pleading.** In an action against a building contractor, the petition declared upon the contract, and alleged a breach thereof, consisting of a delay in completing the work, and the contract was filed therewith as an exhibit. The answer admitted the execution of the contract, and pleaded that the time limit prescribed in the contract was waived because of several matters causing delay. Plaintiff filed merely a general denial, by way of reply. *Held*, that plaintiff could rely on a provision of the contract requiring claims for an extension of time to be made in writing within forty-eight hours after the occurrence of the delay, notwithstanding he did not set it up in his reply, since the admission by defendant of the execution of the contract not only ran through the whole defense, but was indisputable on the trial of other issues raised by the pleadings, and, in view of such admission, defendant's plea of waiver

Hiller v. Daman.

was of no effect, in the absence of averments showing compliance with such provision by defendant.

6. **PRINCIPAL AND SURETY: Building Contracts: Alteration of Contract: Discharge of Surety.**  Where a building contract contemplated that, in the work of excavation, filled ground might be encountered, and fixed the prices for excavating it, the performance of such excavation work was not an alteration of the contract, discharging the contractor's sureties.

7. ——: ——: ——: ——.  Where a bond, given to insure the performance of a building contract, provided that the parties might make such changes in the work as they deemed proper, not exceeding a specified amount, and the sureties gave their consent thereto in advance, the sureties were not discharged by reason of changes made by the owner and contractor, not entailing an expense in excess of the specified amount, although the contract did not refer to the making of such changes.

8. ——: ——: **Contract and Bond Construed Together.** A building contract and a bond given to secure its performance are to be read and considered together, and a provision relating to the surety is binding on him, whether set out in the one instrument or the other.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey*, Judge.

AFFIRMED.

*S. Mayner Wallace, Wm. R. Orthwein* and *Shepard Barclay* for appellants.

(1) The times specified in the contract, to-wit, August 1 and August 20, 1908, for the completion of the buildings, were waived by the plaintiff because of the fact that the lots upon which they were to be erected were, when the contract was signed (and without the knowledge of the contractor), encumbered by a lot of material, to remove which required twelve days of time. Eldridge v. Fuhr, 59 Mo. App. 44.   (2) Said times for the completion of said buildings were waived because of the fact that extra work for the additional and extended foundations for both of said buildings was done, the doing of which required from the 21st of

May until late in July. The extension implied by plaintiff's order for large extra work is an extension for a reasonable time therefor; and there is no evidence or allegation that the extra work was not done within a reasonable time; the only proof on that subject is by defendant to the contrary showing the extras were done in a reasonable time. Paddock v. Stout, 121 Ill. 571; Hotel v. Brumbaugh, 168 Fed. 867; Ward v. Haren, 139 Mo. App. 8; Kenny v. Monahan, 169 N. Y. 591. (3) Said times for the completion of said buildings were also waived because of the fact that plaintiff delayed the payment of the contractor's estimate, due in July, from July 2nd to July 13th, during which time the contractor could not pay his men, and because of which they refused to work. This was an act of the owner contributing to the delay. Ward v. Haren, 139 Mo. App. 8. (4) Said times for the completion of said buildings were waived because of the fact that, when said times arrived, plaintiff permitted the contractor to continue work and continued to pay the contractor's accruing estimates until both of the buildings were completed, without objection on the ground of delay. Gallagher v. Nichols (N. Y.), 16 Abb. Pr., N. S. 337; Kulger v. Wiseman, 20 Ohio, 361; Fowl v. Evans, 52 Minn. 551, 54 N. W. 743. (5) In the fourth count, seeking damages for delay, plaintiff declares on an express contract under which the buildings were to have been completed at stated times. In answer thereto, defendants specifically allege certain acts of plaintiff that prevented completion at the times specified, and plead a waiver by him of the time limits because thereof. Replying, plaintiff denied, generally, the averments of the answer, but did not specifically plead that, under the terms of the contract, the time limits fixed therein could have been extended only in the manner pointed out in the contract. By so framing the issue, plaintiff thereby waived the contract provision concerning an extension of time; that provision then

ceased to be material in the case, and evidence concerning same became incompetent and not material. Said provision of the contract must needs have been pleaded, in the reply, in order to have prevented the acts of plaintiff, as alleged in the answer and proven by the evidence, from establishing a general common-law waiver of the time limits within which the buildings were to have been completed. 31 Cyc., 253 (c); Bliss, Code Pleading (3 Ed.), Sec. 352; Flint-Walling Mfg. Co. v. Ball, 43 Mo. App. 504; Guinotte v. Ridge, 46 Mo. App. 254; Northrup v. Miss. Valley Ins. Co., 47 Mo. 435; Musser v. Adler, 86 Mo. 445; Gibson Bros. v. Jenkins, 97 Mo. App. 27; Clingan v. Railroad, 163 Ill. App. 568; Day v. Mill Owners Ins. Co., 75 Iowa, 694, 38 N. W. 113.    (6) After the time limits for the completion of said buildings had been waived, because of facts alleged and proven, plaintiff could recover damages from the defendants for delay only for such time as might elapse after the expiration of a reasonable time for their completion. (No such issue, however, is made by the pleadings.)   Ward v. Haren, 139 Mo. App. 8; Van Stone v. Stilwell, 142 U. S. 128.   (7) Plaintiff could as well waive limitations on his liability to waive, as provided in the contract, as he could waive any of the other provisions of the contract.    (8) Defendant sureties were discharged of their obligation because of the fact that the digging of the extra foundations, without their consent, made extensive and material alterations in their contract, the bond for the faithful performance of which they had executed.   See cases cited to point 9, *infra*.    (9) Said defendant sureties were released of their obligation because of the fact that the extra work done on said foundations, exceeding in cost the sum of $1000, was undertaken and completed without the written order of the architect therefor, as in their contract provided.   Eldridge v. Fuhr, 59 Mo. App. 44; Bagwell v. Am. Surety Co., 102 Mo. App. 707; Beers v. Wolf, 116 Mo. 179; Reis-

saus v. Whites, 128 Mo. App. 135; School Dist. v. Green, 134 Mo. App. 421; Harris v. Taylor, 150 Mo. App. 291; Utterson v. Elmore, 154 Mo. App. 646; Nodaway Drainage Dist. v. Ill. Surety Co., 252 Mo. 543; Lackland et al. v. Renshaw et al., 256 Mo. 133. (10) The court's declaration of law number 2 in which it is declared that the work on the extra foundations "constituted a material alteration" of said building contract, entitled the sureties on said bond to a judgment. Therefore, under the facts as found by the trial court, they ought to be held discharged. Beers v. Wolf, 116 Mo. 179. (11) The petition does not state a cause of action as to either count; because it fails to aver that plaintiff performed the conditions thereof, to be on his part performed. Under our statute, plaintiff may allege performance in a few words (R. S. 1909, sec. 1836), but where his demand under a contract depends on various acts to be by him done (as here) he must aver in some form, and must prove his own compliance as a condition precedent to any recovery. Roy v. Boteler, 40 Mo. App. 222; Pomeroy v. Fullerton, 113 Mo. 441; Bayse v. Ambrose, 32 Mo. 464. (12) The insufficiency of the petition as stating a cause of action or as supporting a judgment may be raised at any stage of the case, and even on appeal for the first time. Lilly v. Menke, 126 Mo. 190. The petition is fatally defective in not averring any loss of rent (if any there was) on account of alleged delay. Such loss is not general damage, but special, and not recoverable without allegation thereof. Adams v. Barry, 10 Gray 361; Parker v. Lowell, 11 Gray 354; 5 Ency. Pl. & Pr. 735. (13) The petition avers that the parties agreed to submit the amount of liability, under clauses 3 and 8 of the contract, to arbitration; and no excuse or avoidance of that provision is alleged, but, on the contrary, the allegations of the petition and the contract show that the petition is fatally deficient in that particular. Lasar v. Baldridge, 32 Mo. App. 362; R. Co. v.

Brewer, 67 Me. 295; McNess v. Ins. Co., 61 Mo. App. 335; Bales v. Gilbert, 84 Mo. App. 675; City v. Gas Co., 70 Mo. 103.

*W. F. Heideman* for respondents.

(1) When the contract provides for additional work if a certain contingency arises, such additional work becomes a part of the contract work as much as any other part thereof, and if the contract further provides the prices to be charged for such additional work, the contractor is bound to perform the additional work, at the prices stipulated, if the contingency arises. Burns Est. v. Fidelity & Dep. Co., 96 Mo. App. 410; Ashenbroedel Club v. Finlay, 53 Mo. App. 260; Wear Bros. v. Schmelzer, 92 Mo. App. 314; Fullerton Lbr. Co. v. Gates, 89 Mo. App. 201. (2) Where the building contract provides that the time therein fixed for completing the work may be extended for any cause for which the contractor is not responsible, provided a claim for such extension is made within twenty-four hours of the occurrence of such delay, such claim is a condition precedent to the contractor's right of an extension of time. Ward v. Haren, 139 Mo. App. 14; Thompson v. St. Charles County, 227 Mo. 220; Railroad v. Southern Sup. Co., 112 Ga. 1. (3) Defendants are liable for any and all damages sustained by plaintiff by reason of the failure to complete the buildings within the contractual time, however slight they might be. Boteler v. Roy, 40 Mo. App. 238; Smith v. Gunn, 122 S. W. 919. (4) When the contract expressly provides, or it appears from the contract that it was within the contemplation of the parties when the contract was made, that if certain contingencies arose, alterations should be made, the sureties are not discharged. Burnes Est. v. Fidelity & Dep. Co., 96 Mo. App. 467; Aschenbroedel Club v. Finlay, 53 Mo. App. 260; Warden v. Ryan, 37 Mo. App. 466; Utterson v. Ellmore, 154 Mo. 650;

Howard County v. Baker, 119 Mo. 397; Fullerton Lbr. Co. v. Gates, 89 Mo. App. 201. (5) When the contract contemplates alterations, there is no necessity for a written order from the architect to carry out such provision. Burnes Est. v. Fidelity & Dep. Co., 96 Mo. App. 410; Wear Brothers v. Schmelzer, 92 Mo. App. 314; Furniture Co. v. Toll, 133 Mo. App. 404; Fullerton Lbr. Co. v. Gates, 89 Mo. App. 201. (6) The probative force of the evidence in this case was for the trial court to determine. The only question before the appellate court is whether there is any evidence to sustain the judgment. State v. Sullivan, 110 Mo. App. 90; Bank v. Armstrong, 92 Mo. 265; State v. Young, 119 Mo. 525; Hones v. Railroad, 245 Mo. 649; McCarthy v. St. Louis Transit Co., 192 Mo. App. 402; Crossen v. Crossen, 169 Mo. 637; Hunt v. Ancient Order, 105 Mo. App. 45; State v. Gleason, 172 Mo. 259; State v. Jacobs, 152 Mo. 565; Furniture Co. v. Toll, 133 Mo. App. 404. (7) Agreements to arbitrate cannot be specifically enforced, whether they are the result of a voluntary act of the parties, or are embodied in a contract. 3 Ency. Pl. & Pr., 151; Sec. 892, R. S. 1909; St. Louis v. Gas Co., 70 Mo. 104; King v. Howard, 27 Mo. 25; Bales v. Gilbert, 84 Mo. App. 679. Where all liability under the contract is denied, there is nothing to bring into operation the provisions for arbitration. McNees v. The Southern Ins. Co., 61 Mo. App. 341. (8) Performance need not be specifically alleged. If the petition contains allegations of conditions precedent, the further allegation of facts showing performance, is sufficient; especially after judgment. Roy v. Boteler, 40 Mo. App. 223; Hoppe v. Stout, 2 Cal. 460; Bailey v. Clay, 4 Rand. (Va.), 346. If the petition omitted to aver performance, that defect was cured by answer. Beckmann v. Phoenix Ins, Co., 49 Mo. App. 604. Appellants are bound by the case made in the trial court. Ice & Cold Storage Co. v. Kuhlmann, 238 Mo. 701; Stonemetz v. Head, 248 Mo.

243; State ex rel. v. Muench, 217 Mo. 139; Lucas v. Cella, 115 Mo. App. 397; Kilpatrick v. Wiley, 197 Mo. 171. (9) Under a general allegation of damages, the loss of the use of the property may be proven. Cook v. Cleary, 48 Mo. App. 166; Cochran v. Railroad, 113 Mo. 359; Moore v. Mountcastle, 72 Mo. 608. The measure of damages for noncompletion of building is rental value. McConey v. Wallace, 22 Mo. App. 377; Dengler v. Auer, 55 Mo. App. 553.

NORTONI, J.—This is a suit for damages alleged to have accrued through several breaches of a building contract. Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff is the owner of the buildings, and defendant William Daman is the contractor, while defendants John C. Timmerberg and Maggie Daman are sureties on his bond for the faithful performance of the contract.

A jury was waived, and the case tried before the court, which found the issue for plaintiff and gave judgment against all the defendants, from which they jointly prosecute the appeal. The contractor, Mr. Daman, interposed a counterclaim for certain alleged extra work, but the finding and judgment were for plaintiff and against him on that as well.

It appears that the items involved in the counterclaim pertain to certain matters covered in the contract for which compensation has been made in accordance with the contract terms, and, therefore, it will be unnecessary to consider the counterclaim separate and apart from the question arising in plaintiff's case.

There are a number of points made in the brief for a reversal of the judgment, but it will not be necessary to discuss them all. Some of them are obviously without merit and others are concluded by our view of the contract and the obligation it imposes.

It appears that on April 20, 1908, defendant William Daman entered into a written contract with Frank A. J. Hiller, whereby he agreed to provide all of the materials and perform all of the work for the completion of two two-story brick buildings situate on a lot at the southwest corner of Clayton and Taylor avenues in St. Louis. One of the buildings contemplated in the contract was designed for a store building with flats overhead, while the other was a double flat building. The buildings were to be constructed in accordance with the plans and specifications prepared by Victor J. Klutho, architect for the owner.

By article 4 of the contract, it is stipulated that the store and flat building should be completed and possession given to the owner on or before August 1, 1908, and the double flat building to be completed and given over to the owner on or before August 20, 1908.

By article 9 of the contract, the price to be paid the contractor for the excavations and the buildings is agreed upon at $14,943, to be paid upon the certificate of the architect on or about the first day of each month—that is, payments equal to ninety per cent of the value of the work performed during the preceding month to be then due and payable. However, the same 9th article of the contract further provides as follows: "It is hereby understood and agreed between the parties that in case filled ground is encountered, prices for extra work to be as follows: Excavation, 75 cents per yard at single measurement. Concrete work, 22 cents per cubic foot. Rubble masonry, $4 per perch." In excavating the cellars for the buildings, filled ground was encountered by the contractor, and it became necessary for him to proceed to a considerable depth by sinking a number of wells and erecting concrete pillars therein. The prosecution of this work was delayed some by frequent rains, until, all in all, several weeks of time were consumed before the foundations were completed. A considerable controversy in the

case arises on this matter, for it is said by defendant contractor that such was extra work which operated to extend the time for the completion of the buildings, while it is asserted on the part of plaintiff that such was work contemplated in the contract, and that no extension of time may be had therefor at any rate, for the reason the contractor laid no claim thereto under the 7th article of the contract, which imposed this obligation upon him. Moreover, it is asserted on the part of defendant sureties that such additional work on foundations was extra work, beyond the pale of the contract, the performance of which destroyed its identity and, therefore, discharged them. On the other hand, it is asserted by plaintiff that such extra work being expressly mentioned and provided for in the contract, in case filled ground was encountered, it was within the contemplation of all the parties, and, therefore, it was, though its precise extent was unknown, a part of the very contract to which the sureties assented upon signing the bond.

The petition is in four counts, but the court found the issue for defendants and gave judgment in their favor on the first count, and that matter will not be further noticed.

In the second count of the petition, the breach assigned relates to the failure of the contractor to install plate glass mirrors for the medicine cases in each of the bathrooms contained in the buildings. Such mirrors were required, according to the plans and specifications, and the breach touching this matter seems to be conceded. It appears the contractor installed inferior mirrors in the medicine cases in eight bathrooms, and it is said the value of each is two dollars less than the mirrors called for in the contract. The court found the issue for plaintiff touching this matter and awarded him damages to the amount of fifteen dollars. The evidence supports the finding, and it may be put aside without further consideration.

Among other things, the 9th article of the contract provides substantially that, should there prove to be any claim which may be established by mechanic's lien against the buildings, or either of them, after all payments are made by the owner, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging it. After the owner had paid the contractor all moneys due him, save $43.17, one Ehle, the plasterer, a subcontractor, served notice on plaintiff that there was a balance due him for plastering of $139.94 and also took steps to establish a mechanic's lien on the buildings by serving notice to that effect. Plaintiff thereupon paid this entire claim, under the provision of the contract last quoted, in order to prevent the accrual of costs, and there seems to be no controversy in the case with respect to the fact that the balance of $139.94 was due the plasterer and that it was paid by plaintiff as above stated. The breach declared upon in the third count of the petition relates to this matter, and it proceeds to recover $139.94 so paid to Ehle, the plasterer.

The court found the issue for plaintiff on this count, but deducted therefrom the balance due the contractor and then in the hands of plaintiff—that is, $43.17—and gave judgment for plaintiff for the remainder. This finding and judgment are amply supported by the evidence and seem to be well enough in every respect; but defendant argues that plaintiff should not recover therefor because the contract says the amount is to be refunded if paid on "any such claim *after* all payments are made to the contractor." Because there remained $43.17 in the hands of the owner due the contractor, it is said the payment of the plasterer's bill was premature, but, obviously, this argument is without merit. It is highly technical and without substance, for it is conceded that the plasterer's bill of $139.94 was unpaid and that plaintiff paid it in order to prevent a lien from being established against

the buildings, and this, too, after the lien notice was served upon him. The mere fact that there remained $43.17 of money due the contractor in his hands at the time is immaterial, for it is clear that substantially all payments had then been made to the contractor by plaintiff before this claim was discovered to be unpaid. It is true plaintiff sued for the entire amount paid out to the plasterer—that is, $139.94—but he is permitted to recover only the balance so paid, with interest, after deducting the small amount then owing by him to the contractor. When it is remembered that, by the command of the statutes, judgments are not to be reversed on appeal save for error affecting the merits of the case against the appellant, it would seem that such a point should not be urged upon us.

The real controversy in the case arises on the fourth count of the petition. The breach alleged in this count relates to the failure of the contractor to complete the buildings in the time specified—that is, the one by August 1, 1908, and the other by August 20, 1908. It is said the buildings were not completed until, one in the latter part of November and the other about the middle of December. Because of this plaintiff lost the rentals for considerable time, which, in all amounted to $165 per month. Defendant contractor insists that the contract time for the completion of the buildings was waived and a reasonable time substituted therefor, because, first, that he was delayed ten days in commencing the work, in that the lots were covered with macadam, and, second, delayed thereafter because of the owner's failure to pay promptly for the work on July 1st the installment of compensation then due under the contract, and third, because of alleged extra work entailed through sinking wells and building concrete pillars, in that filled ground was encountered.

It appears the contract was entered into on the 20th day of April and on the following day defendant

contractor visited the lots with a view of arranging to commence excavating thereon, but upon arriving there he discovered about thirty loads of macadam, which had been placed upon the lots by a street contractor, and he was deterred from commencing work because of that fact. Touching this matter, it appears that neither the owner nor the contractor was advised thereof at the time the contract was made—that is to say, the street contractor had appropriated the use of the lots as a storage place for his macadam without the knowledge or consent of the owner and without the knowledge of defendant. Daman notified plaintiff's agent forthwith to cause the macadam to be removed and he proceeded at once to that end. However, about ten days' time was consumed before the macadam was removed from the lots and the contractor thus enabled to commence work thereon.

Touching the matter of the owner's failure to pay Daman, the contractor, for ninety per cent of the work done in June, which, according to the contract, should have been paid on July 1st, it appears this payment was not made for some reason until July 13th. Because this payment was not promptly made, the excavators quit work for ten or twelve days, and it is insisted this default on the part of the owner operated to extend the time for completing the buildings.

Touching the matter of the alleged extra work in sinking wells and putting in concrete pillars beneath the regular foundation walls designed, it appears several weeks were consumed, inasmuch as the work was delayed by frequent rains as well.

The court denied the right of defendant contractor to an extension of the time because of these facts, for the reason he had made no claim thereto in accordance with the 7th article of the contract, and the judgment is obviously sound, when that instrument is looked to. The 7th article of the contract is as follows:

Hiller v. Daman.

"Should the contractor be delayed in the prosecution or completion of the work by the act, neglect or default of the owner, of the architect, or of any other contractor employed by the owner upon the work, or by any damage caused by fire or other casualty for which the contractor is not responsible, or by general strikes or lockouts caused by acts of employees, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all the causes aforesaid, which extended period shall be determined and fixed by the architect; but no such allowance shall be made unless a claim therefor is presented in writing to the architect within forty-eight hours of the occurrence of such delay."

Such provisions are inserted in building contracts with a view of clearly defining the rights of the parties thereto and obviating controversies which so frequently arise with respect to delays and alleged waivers of time, based upon claims concerning extra work and other variations from the contract terms, which, as a rule, almost always occur to some extent, if the work is of any considerable proportion. A provision of a building contract precisely similar to the one above copied was considered by this court and upheld on a former occasion. In that case, it was declared that, where the contract contains this article, it is encumbent upon the contractor, in order to avail of an extension of time provided for completion of the buildings in other portions of the contract, to lay claim therefor at the time and within the time and manner stipulated; otherwise no such extension of time is available to him on the grounds of waiver, for it will not do to imply a reasonable time in the very face of a provision stipulating a precise time, coupled with another express provision to the effect that such time shall prevail unless extended in the manner agreed up-

on by the parties. [See Ward v. Haren, 139 Mo. App. 8, 119 S. W. 446.]

Here, it is conceded that defendant Daman, the contractor, made no claim whatever for an extension of time, as required by the 7th article of the contract, because of any of the delays above referred to, and, indeed, he made no such claim of any kind or at any time until after the institution of the suit. But it is said the case of Eldridge v. Fuhr, 59 Mo. App. 45, determines that where a lot is not given into possession of the contractor by the owner, so that he might immediately commence work thereon, such fact operates an extension of time. The judgment there given by the court is sound, indeed, on the facts it portrays, but the case is entirely dissimilar from this one. In that case, the owner expressly agreed in the contract to deliver possession of the lot to the contractor on or before the 9th day of April, and he breached this provision in that he failed to do so until April 20th. Here, no such agreement whatever appears between the parties, but this is of only slight importance, as it may be conceded, though not decided, that the law devolved upon the owner the duty in the instant case of furnishing the lots clear of macadam if nothing otherwise appeared. But the case of Eldridge v. Fuhr, supra, is, moreover, to be distinguished from this one in that there the contract contained no provision whatever requiring the contractor to lay a claim for an extension of time, if one were desired, as in the case at bar. Had Daman, the contractor, proceeded in accordance with the 7th article of the contract and presented in writing to the architect, within forty-eight hours of the occurrence of the delay, his claim for an extension of time on account of it, a different situation entirely would appear. But this he did not do, and he is, therefore, concluded with respect to that matter by his failure to avail himself of the provisions of the contract.

But it is said, though such be true, article 7 of the contract contemplates delays in the "prosecution or completion of the work," and that the ten days' delay occasioned because of the failure to see that the lots were cleared of macadam when the contract was let is not within it, because such delay occurred before the commencement of the work. Touching this matter, it is to be said that the subject-matter of article 7 of the contract is delays that might occur, and it is obvious the delay here involved occurred after the execution of the contract, for until that fact was accomplished no right to performance in execution of the contract obtained. It is, therefore, manifest that the delay referred to, though it was occasioned by the condition of the lot at the time the contract was let, falls within the very terms of the stipulation, for it deterred the "completion" of the buildings. Obviously the contractor should have made his claim for an extension of time in accordance with the provisions of article 7.

No claim was made on the part of the contractor for an extension of time on account of delay in the work occasioned by the failure of the owner to pay him ninety per cent of the contract price for work done during the month of June, which became due on the first day of July. It is true this payment was deferred until July 13th, and it is true, too, that the workmen quit because their pay was not forthcoming. But this delay so occasioned, though because of the neglect or default of the owner, is not available to the contractor as a waiver of the other terms of the contract, for the reason that the contractor made no claim therefor under article 7 above referred to.

Touching the matter of the delay occasioned through alleged additional work in sinking a number of wells and filling them with concrete beneath the regular foundation walls of the building, it is to be said that this work was clearly within the terms of the contract. The parties contemplated that filled ground

might be encountered in this connection and stipulated in the contract concerning it. The contract recites, "It is hereby understood and agreed between the parties that in case filled ground is encountered, prices for extra work to be as follows: Excavation, 75 cents per yard at single measurements. Concrete work, 22 cents per cubic foot. Rubble masonry, $4 per perch." Obviously this work cannot be regarded as extra work, for it was expressly agreed upon in the contract. Moreover, whether it be extra or not, the contractor is not entitled to an extension of time because of it, for the reason that he made no claim whatever on that score, as he was required to do in order to obtain an extension of time under the provisions of article 7 of the contract.

But it is argued article 7 of the contract is not available to plaintiff, for that he did not set it forth and rely upon it in his reply. The petition declares upon the contract and assigns the several breaches thereof herein above discussed. Moreover, the contract is filed with the petition as an exhibit in the case. By their answer defendants admit the execution of the contract, as pleaded in the petition, and all of its terms, but incorporate another plea besides, to the effect that the time limit prescribed in the contract for the completion of the building was waived because of the several matters above discussed. To this answer plaintiff filed merely a general denial by way of reply. It is argued that, in this state of the pleadings, plaintiff is not entitled to avail himself of article 7 of the contract, which imposed the duty upon defendant Daman to lay claims for an extension of time in order to avail himself thereof. Obviously this provision of the contract is available to plaintiff, even though he did not expressly plead it in the reply, for defendant expressly admitted the entire contract containing all its parts, in his answer. Such an admission in the answer not only runs through the whole defense of the case, as was

said by the Supreme Court in Cox v. Volkert, 86 Mo. 505, 511, but is indisputable on the trial of other issues raised by the pleadings. [Call v. Moll, 89 Mo. App. 386.] Indeed, it would seem, after thus expressly admitting the contract in the answer, containing as it did article 7, that defendant's plea of a waiver of the provisions of the contract for completing the buildings within the time therein stipulated was beside the case, unless it set forth, too, compliance with such article 7.

The defendant's sureties argue that they are discharged from their obligation because of changes made in the execution of the contract and additional work entailed. This argument proceeds from the fact that, upon encountering filled ground, the several wells were made and concrete pillars erected therein beneath the foundations. But obviously such is not an alteration of the contract, in the sense required to discharge the sureties from their obligation to respond for its breach. The identity of the contract was in nowise impaired by this work, for the very contract to the execution of the faithful performance of which the sureties stood responsible contemplated such work, in the event filled ground was encountered, and provided the prices that should be paid therefor. In such circumstances, it appearing that the parties contemplated and the contract clearly referred to such additional work as within their contemplation when it was executed, the sureties are regarded as having consented thereto at the time of assuming their obligation, and may not be heard to complain thereafter. The question has been pointedly decided heretofore. [See Burnes' Estate v. Fidelity & Deposit Co., 96 Mo. App. 467, 70 S. W. 518; The Ashenbroedel Club v. Finlay, 53 Mo. App. 256, 260.]

However, there was a slight change made by consent of the owner and the contractor, whereby certain re-enforced concrete beams were installed in lieu of some other work, and an argument is predicated on

this matter to the effect that the sureties were discharged because of such change. No doubt this argument would inhere with considerable force, were it not for the fact that the bond which the sureties executed expressly stipulates that the parties may make such changes and alterations as they deem proper, not exceeding the cost of $1000, and that the sureties accorded their consent thereto in advance. The changes so made did not entail an item of expense to equal that to which the sureties had thus consented, and it, therefore, avails nothing to them by way of acquitting their obligation to respond. It is true this particular matter is not referred to in the contract, but it is expressly provided for in the bond. The suit proceeds on both the bond and the contract, for they are to be read and considered together. The consent stipulated in the one is equally as valid on this matter as in the other.

The questions made on defendant Daman's counterclaim are all fully disposed of by what has been said in the opinion, and it is unnecessary to consider them separately. It seems to be clear enough that there is no merit in the controversy.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.