[L. A. No. 7909. In Bank.—July 31, 1925.]

JOHN ROBERTS, Plaintiff, Cross-defendant and Respondent, v. SECURITY TRUST & SAVINGS BANK (a Corporation) et al., as Executors, etc., Defendants, Cross-complainants and Respondents; SECURITY TRUST & SAVINGS BANK (a Corporation) et al., Defendants, Cross-defendants and Respondents; UNITED STATES FIDELITY & GUARANTY COMPANY (a Corporation), Cross-defendant and Appellant.

[1] BUILDING CONTRACTS—SURETY BOND—INCORPORATION BY REFERENCE —SCOPE OF UNDERTAKING.—Where the surety company bond executed for the faithful performance of a building contract refers to said contract, briefly describes the work to be done to complete the building in accordance with the plans and specifications "referred to in said contract, to which contract reference is" had, the bond and the contract must be read together to determine the scope of the surety company's undertaking.

[2] ID.—EXTENSION OF LIABILITY—CONSENT OF SURETY TO CHANGE.— The liability of a surety is not to be extended by implication beyond the express terms of his contract, and, when the undertaking is to assure the performance of an existing contract, if any change is made in its requirements in matters of substance without the consent of the surety, his liability is extinguished; and this rule applies to building contracts, as to ordinary transactions.

[3] ID.—CONSTRUCTION OF CONTRACT AND BOND TOGETHER—INTENT OF PARTIES.—A surety bond may incorporate, by reference expressly made thereto, other contracts, in which case the bond and the contract should be read together and construed fairly and reasonably as a whole according to the intention of the parties; and, in interpreting the language of the undertaking for the purpose of gathering its scope, or the measure of the liability of the sureties, the court must do so by treating or viewing the contract and the undertaking as constituting an indivisible contract.

1. See 23 Cal. Jur. 1017.

2. What operates as release of surety, note, 28 Am. St. Rep. 691. Release of surety by changing duties or obligations of principal, note, 6 Am. St. Rep. 458.

Discharge of surety on contractor's bond by alteration in work to be done under contract, note, 16 Ann. Cas. 347. See, also, 21 R. C. L. 1004; 23 Cal. Jur. 1032.

[4] ID.—RIGHT OF OWNER TO MAKE CHANGES—MODIFICATIONS PERMISSIBLE—RELEASE OF SURETY.—Where alterations and changes in a building are made pursuant to a provision in the contract that should the owner, at any time during the progress of the work, require any alteration, deviation, addition to, or omission from the contract, plans, or specifications, she should have the right and power to make such change or changes, and the same should in no way injuriously affect or make void the contract, they are binding upon the surety unless they are so extensive and material as to amount to a departure from the original contract rather than a permissible modification of its details.

[5] ID.—CONSENT TO MAKE CHANGES—LIABILITY OF SURETY.—Where a building contract is referred to in the bond, and one of the provisions of the contract is that the contractor shall well and faithfully keep its covenants and agreements and turn over the building free and clear of liens accruing by reason of the work described in the contract or any modification thereof, the surety must be held to have agreed that it will be equally bound in case changes are made within the scope of the provisions of said contract.

[6] ID.—ALTERATIONS—DELAYS—CHANGED COSTS—CONTRACT BINDING UPON SURETY.—Where a building contract provides that the owner may make. or require to be made any alterations, additions, omissions, or substitutions in the contract, and further provides that if such alterations and deviations from the plans and specifications involve increased or diminished expense and require additional time to complete the building, a proper addition to or reduction of the contract price shall be made and a reasonable amount of time be added for the completion of the building, such provision is one of the covenants to which a surety company will be held to have subscribed and bound itself.

[7] ID.—COSTS OF EXTRA WORK—DELAYS—FAILURE TO AGREE IN ADVANCE—SURETY NOT RELEASED.—Where there is no express requirement in a building contract that the surety for the contractor shall be consulted, or its express consent obtained for the making of any alterations or modifications or changes in the plans or specifications or in the contract for the building, and the surety agrees in advance to the making of such changes, with the proviso inserted that the cost thereof, and any delay occasioned the contractor thereby, shall be fixed and determined before any extra work is done, the failure of the owner and the contractor to agree upon these matters in advance as required by the contract will not, in and of itself, work a release of the surety on the contractor's bond. ·

4. See 23 **Cal. Jur.** 1037.

[8] ID.—NONCOMPLIANCE WITH FORMALITIES—SURETY NOT PREJUDICED.—Where neither the cost to the owner, nor the burden placed on the contractor, is any greater or any less by reason of the failure of the owner and the contractor to observe the formalities of the contract with reference to the reduction to writing of estimates and orders for extra work and materials and the delays incident thereto, if any, than it would have been had those matters been reduced to writing, the liability of the surety is just the same as though all those requirements of the contract had been strictly observed.

[9] ID.—EXTENSION OF TIME FOR EXTRA WORK—WAIVER OF CLAIM—FAILURE TO INVOKE RIGHTS UNDER CONTRACT.—Where a building contract contains a clause that "should the contractor be obstructed or delayed in the prosecution or completion of work by the act, neglect, delay or default of the owner, or the architect, . . . then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid; but no such allowance shall be made unless a claim therefor is presented in writing to the architect within 24 hours of the occurrence of such delay. The duration of such extension shall be certified to by the architect, and his decision shall be final," the failure of the contractor to invoke the benefit of such clause of the contract, upon the occasion of the requirement of extra work by the owner, in case any delay was occasioned by such act of the owner, operated to waive any right to subsequently claim an extension on account of his being required to do such extra work.

[10] ID.—ARCHITECT AS ARBITER—CERTIFICATION AS TO FACTS—IMPEACHMENT OF CERTIFICATE.—Where the parties to a building contract, by its terms, authorize the architect, as arbiter, to determine and certify to facts material to a proceeding under the contract, the certificate of the architect duly made, that the fact exists, is conclusive upon the parties with respect to the thing to be done, to which such fact relates, or as to which, under the proceeding, it is to affect the rights of the parties; and such certificate can be impeached only for fraud or for gross mistake amounting to fraud.

[11] ID.—DELAYS OCCASIONED BY EXTRA WORK—CERTIFICATE OF ARCHITECT—SUBSEQUENT ACTION AT LAW—EVIDENCE.—Where a building contract, by its terms, so authorizes the architect to certify, among other things, as to delays occasioned by the acts of the owner, and the architect finds and certifies that, beyond one extension of thirty days, which was given, the contractor was not delayed in the completion of the building by the performance of any extras, or by

---

8.   See 21 R. C. L. 1007; 23 Cal. Jur. 1034.

10.   Conclusiveness of certificate of architect on parties to building contract, notes, 10 Ann. Cas. 575; Ann. Cas. 1913A, 180; 17 L. R. A. 211. See, also, 6 R. C. L. 962; 3 Cal. Jur. 109.

any act, neglect, delay, or default of the owner or the architect, or any other contractor employed by the owner on the work, in a subsequent action involving the question of delay by the contractor in the completion of the work the trial court is not in error in excluding evidence by which the contractor and his surety seek to show that further delay in the completion of the building resulted from, and was necessitated by, the performance of extra and additional work.

[12] ID.—STATUTORY BOND—SUIT BY LABORERS AND MATERIALMEN—JUDGMENT AGAINST SURETY—UNPAID CONTRACT PRICE.—Where the bond given by the surety to secure the payment for labor and materials, in accordance with the provisions of section 1183 of the Code of Civil Procedure, is conditioned that the contractor shall pay, or cause to be paid, all claims against him for such labor or materials, and such bond is expressly made to inure to the benefit of any and all persons who perform labor upon or furnish materials to be used in the work described in the contract between the contractor and the owner, or any modification thereof, it is proper for the court to enter a decree giving the materialmen and laborers direct judgments against the surety for the full amounts of their respective claims, notwithstanding · there remains in the hands of the owner more than enough of the contract price due the contractor to fully pay and discharge the liens.

---

(1) 9 C. J., p. 36, n. 93, 97; 32 Cyc., p. 73, n. 19.   (2) 32 Cyc., p. 73, n. 22, p. 177, n. 74, p. 188, n. 57.   (3) 32 Cyc., p. 73, n. 19. (4) 32 Cyc., p. 188, n. 57.   (5) 32 Cyc., p. 188, n. 57.   (6) 32 Cyc., p. 188, n. 57.   (7) 32 Cyc., p. 188, n. 57.   (8) 32 Cyc., p. 188, n. 58. (9) 9 C. J., p. 782, n. 21, 22, p. 790, n. 91.   (10) 9 C. J., p. 772, n. 27, p. 776, n. 61.   (11) 9 C. J., p. 772, n. 27, p. 879, n. 92 New. (12) 27 Cyc., p. 281, n. 58.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

Lawler & Degnan for Appellant.

Newlin & Ashburn, G. C. De Garmo, H. B. Cornell, and Culver & Nourse for Respondents.

Gibson, Dunn & Crutcher and H. F. Prince, *Amici Curiae.*

WASTE, J.—This is a companion appeal to that already considered by the court in *Roberts* v. *Spires et al.,* 195 Cal.

267 [232 Pac. 708]. It is therefore unnecessary to restate the facts set forth in that opinion. The lien claimants in the case were awarded personal judgments against Roberts, the contractor, and the United States Fidelity & Guaranty Company, his surety upon the materialmen's bond, for the full amounts of their respective claims, aggregating $40,791.41, which were adjudged to be liens upon the property of the owner. The judgment directed that the owner pay this sum of $40,791.41 to the lienholders out of the unpaid balance of the contract price due Roberts, amounting to $52,-295.56, and apply the balance of $11,504.15 toward the payment of her judgment in the sum of $36,211.35 for damages against Roberts, caused by his delay in completing the building and that she have and recover of and from the contractor and his surety the unpaid balance of her damages, amounting to $24,707.20, plus certain costs.

Mrs. Spires appealed from that portion of the judgment which required her to pay the lien claimants in full before deducting the whole amount of her judgment for damages from the amount due the contractor. That judgment was affirmed. (*Roberts* v. *Spires, supra.*)

The United States Fidelity & Guaranty Company, as surety on the contractor's bonds, appealed from the judgment upon the ground that the court erred (1) in awarding to the owner, and against it, any damages caused by the delay of the contractor in completing the building, and (2) in decreeing that the laborers and materialmen have direct judgments against the surety for the respective amounts of their claims, notwithstanding such claims were found to be a lien upon the owner's property, when there remained in the hands of the owner more than enough of the contract price due to the contractor to pay and discharge all of such liens. The surety company, by an amendment to its answer to the cross-complaint of the owner, Mrs. Spires, who sought to recover damages caused by the delay of the contractor in completing the building, took the position that it had been released from all liability to the owner for the reason that during the progress of the work material provisions of the contract were disregarded and set at naught in that extra labor and materials were ordered and furnished by the contractor without the knowledge or consent of the surety company, and that no extension of time to be granted to

196 Cal.—36

the contractor for completing the work in consequence of such extra work and materials was ever established, as required by the contract. It also alleged that a substantial part of such extra work and material was ordered and performed without any agreement having been reached between the owner and the contractor as to the amount to be paid therefor, and that the actual value of such extra labor and material was in excess of the sum of $11,000. It was also claimed that delays in the construction of the building, due to and caused by such extra and additional work, exceeded 120 days. Roberts, the contractor, in his answer to the cross-complaint of the owner, also alleged that he was delayed in the completion of his contract by extra and additional work required and ordered by the owner, but that the provisions of the contract invoked by appellant were waived by the owner and himself.

At the trial Roberts and appellant each sought to introduce evidence of the delay in the completion of the building, resulting from and necessitated by the performance of extra and additional work, beyond the time originally required by the contract. The owner objected, and the court sustained the objection. The contractor is not here on appeal, and we need consider the ruling of the court only in its effect on the cause of the surety. As to it, the objection to the introduction of the evidence was twofold: First, that the contractor and the owner had waived certain of the contract requirements, and, second, that the condition of the undertaking given by the surety company constituted an assent in advance to a departure from the terms of the building agreement, for the reason that the bond, by its terms, guaranteed the provisions of the contract, "or any modification thereof." Both views were adopted by the trial court. It construed the contract together with the bond, and held that the surety for the contractor must be deemed to have assented to a provision in the contract that, should the owner at any time during the progress of the work request any alterations, deviations, additions, or omissions from the contract, she should be at liberty to make such change or changes without in any way affecting or making void its terms. As a result of the court's view, the judgment against the appellant surety company followed.

[1]   The faithful performance bond executed by the appellant refers to the contract between Mrs. Spires, as owner, and Roberts, as contractor, and briefly describes the work to be done to complete the building in accordance with the plans and specifications "referred to in said contract, to which contract reference is" had.   The contract, by reference having been made a part of the bond, the two instruments must be read together in order to determine the scope of appellant's undertaking.   (*Smith* v. *Molleson,* 148 N. Y. 241, 246 [42 N. E. 669, 671].)   In consideration of the letting of the contract by Mrs. Spires to Roberts, appellant is, by the terms of the bond, held and firmly bound unto the owner in the sum of $47,500, or twenty-five per cent of the contract price.   The condition of the obligation is that if the contractor shall well and faithfully keep and perform all of the covenants and agreements of the contract by him to be kept and performed, and shall turn over and deliver the structure according to the contract, free from all liens that may be filed or asserted by any and all persons who perform labor upon or furnish materials to be used in the work described in the contract, or in any modification thereof, and shall save and hold harmless the owner from any and all loss or damage arising out of the failure of the contractor to fulfill his contract, then the obligation to be void; otherwise to remain in full force and effect.   There is a provision in the contract that, should the owner at any time during the progress of the work, require any alteration, deviation, addition to, or omission from, the contract, plans, or specifications, she should have the right and power to make such change or changes, and the same should "in no way injuriously affect or make void the contract," but the difference for work omitted should be deducted from the amount of the contract by a fair and reasonable valuation, and for additional work required, the amount, based upon the market value of labor and material, should be agreed upon before commencing such additions, which agreement should state also the extension of time, if any, which was to be granted the contractor by reason thereof.

The trial court found that, during the progress of the work, labor and material, in addition to that required by the contract, plans and specifications, were ordered by the owner and furnished by the contractor, a large portion of which

was ordered and furnished without any agreement being entered into establishing the amount thereof before the additional work was commenced, and without any agreement fixing the extension of time which should be granted the contractor by reason of such extra construction. These findings furnish the basis for the first contention made by the appellant, which is that no judgment should have been awarded against it for the default of the contractor in not completing the building on time, for the reason, it contends, that without its consent the original obligation of its principal, the contractor, was altered in a material respect, whereby it was exonerated from all liability. It relies upon the rule of *strictissimi juris,* relating to the obligation of sureties, found in sections 2819 and 2840 of the Civil Code.

[2] No principle of law is perhaps better settled than that the liability of a surety is not to be extended by implication beyond the express terms of his contract. (Civ. Code, sec. 2836.) It is also the law that when the undertaking is to assure the performance of an existing contract, if any change is made in its requirements in matters of substance without the consent of the surety, his liability is extinquished. (*United States* v. *Freel,* 186 U. S. 309, 316 [46 L. Ed. 1177, 22 Sup. Ct. Rep. 875, see, also, Rose's U. S. Notes].) The rule applies to building contracts, as to ordinary transactions, and in *Wolf* v. *Aetna Indemnity Co.,* 163 Cal. 597, 605 [126 Pac. 470, 473], this court said: "It may be conceded that material changes in the plans and specifications not expressly authorized by the contract, or material changes authorized by the contract, made by the parties without following the particular method prescribed therefor by the contract, made without the knowledge or consent of the surety, would operate to discharge the surety on the bond of the contractor." (See, also, *Tally* v. *Parsons,* 131 Cal. 516 [63 Pac. 833].) The authority most strongly relied on by the appellant is the decision of this court in *First Congregational Church of Christ* v. *Lowrey,* 175 Cal. 124 [165 Pac. 440]. The contract between the owner and the contractor in that case made provision for alterations, deviations, additions, or omissions in the work to be done, and provided that the reasonable value should be added to or deducted from the contract price, "provided, however, that the character and

valuation of any or all of said changes, omissions, or extra work should be agreed upon and fixed in writing, signed by the owner and the contractor prior to the commencement of the work of making such alterations, deviations, additions or omissions.'' The contractor abandoned his contract, and the owner brought an action against him and his sureties to recover the amount of damages which it alleged it sustained by reason of the failure to complete the contract. The trial court found that certain alterations and omissions were made and agreed to between the owner and the contractor, amounting to $577.25. The character and value of these changes and extra work were agreed upon by the owner and contractor, but were not agreed upon and fixed in writing prior to the commencement of the work, or at any time; but the court found that none of the alterations, deviations, or omissions was detrimental to the interest of the surety, and did not materially alter the terms or conditions of the contract or bond. Judgment was entered for the owner, and the surety appealed. This court held that the alterations, changes, and omissions were material, and that the case was controlled by section 2819 of the Civil Code, which provides that a guarantor ''is exonerated . . . if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect,'' and by section 2840 of the same code, which applies the rule to sureties. The court said (p. 126 [165 Pac. 441]): ''Our decisions construing these sections uniformly hold that if there has been such a change in the contract in any (material) respect, the inquiry there ends, and the guarantor is exonerated, and that it is not a subject of inquiry whether the alteration has or has not been to his injury.''

Our present view is that the decision in *First Congregational Church of Christ* v. *Lowrey, supra,* is correct as a general statement of an abstract proposition of law, but that it cannot be properly held to be decisive of the present controversy. The decision fails to take into consideration other well-established principles of law that have a material bearing on the liability of sureties undertaking to guarantee the performance of contracts for the erection of buildings, wherein provision is made for modifications or for changes as the work progresses, and entirely fails to note the distinction between material changes in the contract or in the work to

be performed and mere departure from the terms of the contract relating to the method of procedure or performance in the manner of carrying out the contract. For these reasons we do not consider the opinion a final authority on the question now here. It was for that reason, also, that we were impelled to grant a rehearing in this case following our first decision, in which we rested our conclusion primarily on the Lowrey case. The contentions now advanced by the respondents were not considered or referred to in the earlier decision.

Our Civil Code (sec. 2837) provides that, in interpreting the terms of a contract of suretyship, the same rules are to be observed as in the case of other contracts. In *Sather Banking Co.* v. *Briggs Co.*, 138 Cal. 724, this court said (p. 730 [72 Pac. 352, 354]) : ''While it is true that a surety cannot be held beyond the express terms of his contract, yet in interpreting the terms of a contract of suretyship, the same rules are to be observed as in the case of other contracts. Such construction does not mean that words are to be distorted out of their natural meaning, or that, by implication, something can be read into the contract that it will not reasonably bear; but it means that the contract shall be fairly construed with a view to effect the object for which it was given and to accomplish the purpose for which it was designed. The old rule of *strictissimi juris* applies only to the extent that no implication shall be indulged in to impose a burden not clearly inferable from the language of the contract, but does not apply so as to hold that the contract shall not be reasonably interpreted as other contracts are.'' **[3]** A bond may incorporate, by reference expressly made thereto, other contracts, in which case the bond and the contract should be read together and construed fairly and reasonably as a whole according to the intention of the parties. (*Callan* v. *Empire State Surety Co.*, 20 Cal. App. 483, 486 [129 Pac. 978, 979] ; *Smith* v. *Molleson, supra.*) Therefore, in interpreting the language of the undertaking for the purpose of gathering its scope, or the measure of the liability of the sureties, we must do so by treating or viewing the contract and the undertaking as constituting an indivisible contract. In other words, we must, in order to ascertain the nature and extent of the liability to which the sureties have bound themselves, examine

the language of the undertaking by the light of the agreement, faithful performance of the terms of which it guarantees (*W. P. Fuller & Co.* v. *Alturas School District,* 28 Cal. App. 609, 613 [153 Pac. 743]); or, as was said by this court, the extent of the surety's liability must be gathered from the language used, when read in the light of the circumstances attending the transaction. (*Hollenbeck-Bush etc. Co.* v. *Amweg,* 177 Cal. 159, 162 [170 Pac. 148].)

[4]    The trial court here found that it was not true the additional work was ordered or performed without the knowledge or consent of the appellant, but that it had notice and knowledge of the changes and alterations by reason of the provisions in the contract and undertaking, which amounted "to advance consent of said surety to the said changes and alterations." This finding is based on the provision of the contract (*supra*) that should the owner at any time during the progress of the work require any altera-. tion, deviation, addition to, or omission from the contract, plans, or specifications, she should have the right and power to make such change or changes, and the same should in no way injuriously affect or make void the contract. The court also found that the provision in the contract requiring the value of extra labor and material and the extension of time, if any, to be granted, to be reduced to writing before the work was done or materials furnished, was waived by the owner, the contractor and the architect. Provisions in building contracts similar in language and in effect have been frequently construed by the courts. The rule seems to be thoroughly well established that where alterations and changes are made pursuant to such agreement they are binding upon the surety unless they are so extensive and material as to amount to a departure from the original contract rather than a permissible modification of its details. (*Equitable Surety Co.* v. *McMillan,* 234 U. S. 448, 457 [58 L. Ed. 1394, 34 Sup. Ct. Rep. 803, see, also, Rose's U. S. Notes].) [5] It appears to be equally well established that where a building contract is referred to in the bond, and one of its provisions is that the contractor shall well and faithfully keep its covenants and agreements and turn over the building free and clear of liens accruing by reason of the work described in the contract or any modification thereof, the surety must be held to have agreed that

it will be equally bound in case changes are made within the scope of the provisions of the contract referred to. (*People's Lumber Co.* v. *Gillard,* 136 Cal. 55, 61 [68 Pac. 576].) [6] Where the contract provides that the owner may make or require to be made any alterations, additions, omissions, or substitutions in the plans, materials, or workmanship he may desire without invalidating the contract, and further provides that if such alterations and deviations from the plans and specifications involve increased or diminished expense and require additional time to complete the building, a proper addition to or reduction of the contract price shall be made and a reasonable amount of time be added for the completion of the building, such provision is one of the covenants to which a surety company will be held to have subscribed and bound itself. (*Dunne Investment Co.* v. *Empire State Surety Co.,* 27 Cal. App. 208, 219 [150 Pac. 405, 410]; *City of Kennett* v. *Katz Const. Co.,* 273 Mo. 279 [202 S. W. 558, 563]; *Hiller* v. *Daman,* 183 Mo. App. 315 [166 S. W. 869].)

[7] There is no express requirement in the contract here under consideration that the surety for the contractor should be consulted, or its express consent obtained for the making of any alterations or modifications or changes in the plans or specifications or in the contract for the building. It agreed in advance to the making of such changes, with the proviso inserted that the cost thereof, and any delay occasioned the contractor thereby, should be fixed and determined before any extra work was done. The first question that presents itself, then, in this case is, Did the failure of the owner and the contractor to agree upon these matters, as required by the contract, of itself work a release of the surety on the contractor's bond? We are of opinion that it did not. (*Callan* v. *Empire State Surety Co., supra.*) The appellant stood as guarantor for the faithful performance of the building contract, or any modification thereof. It consented in advance to the making of alterations, deviations, additions, or omissions during the construction, with the understanding that the same should in no way injuriously affect or make void the contract. We are not now dealing with an alteration of the contract for the performance of which the appellant became surety. About the most that can be said is that we are considering a departure from or

a violation by the parties of certain provisions relating to the method of procedure during the performance of the contract. (*Smith* v. *Molleson, supra; Hustace* v. *Davis,* 23 Hawaii, 606.) In this last case it was said (p. 612): "Courts have properly drawn a distinction between changes in the contract or in the work to be performed, and a departure from the terms of the contract relating to the method of procedure or performance in the manner of carrying out the contract. As to the latter, deviations will not result in the release of the surety unless they tend to prejudice his rights." The rule seems to be quite concisely stated in *Martin* v. *Whites,* 128 Mo. App. 117 [106 S. W. 608], where, in discussing the rule that the liability of a surety is *strictissimi juris,* and that an alteration or change in the terms of the contract by the principal parties without the consent of the surety will operate to release him, the court said (p. 123 [106 S. W. 609]): "There is a marked distinction, however, between a case where the identity of the surety's contract has been destroyed without his consent and a case where there has been merely an immaterial deviation in performance from its terms without any implied or express agreement between the parties adding to or deducting from the original terms. The principle above referred to is entirely without influence under the circumstances mentioned when there has been a mere permissive deviation in acts and omissions with respect to the performance of the contract. Now, in such cases the matter of the surety's liability or nonliability turns upon the question as to whether or not the deviations by the owner or obligee are material to the surety's risk. The sum and substance of the entire adjudicated law upon this subject is, we believe, that whenever a creditor does an act whereby injury or loss or liability to loss or increase of risk accrues to the surety without his assent, the surety is entitled by reason thereof to be discharged. In accord with this doctrine it has frequently been adjudged in building cases that in the matter of acts and omissions with respect to the performance of the contract assured, mere immaterial variations and insubstantial deviations which do not in any manner prejudice the right or encroach upon the liability of the surety, will be insufficient to operate a discharge." (See, also, *School District* v. *United States F. & G. Co.,* 96 Kan. 499 [152 Pac. 668, 670].)

An interesting note on the subject we are now considering is to be found in 16 Am. & Eng. Ann. Cas. 349, wherein the writer declares that the reason for the above rule is based upon the doctrine of prior consent of the surety. It is held that the stipulations permitting alterations constitute consent in advance on the part of the surety to such alterations as are within the terms of the stipulations. It has become a common practice, the writer continues, for the parties to a working contract, when stipulating for alterations, to provide that such changes shall be made only on written agreement of the parties or that the parties shall agree upon the cost thereof before they shall be made. When a material alteration is made without observance of such formalities, the question arises whether the sureties are discharged. The authorities are not agreed on the subject. In some jurisdictions it is held that a failure to observe such formalities will discharge the surety. A contrary doctrine is adhered to in other jurisdictions, where it is held that such formalities are solely for the benefit of the owners and contractors, and may be waived by them without releasing the surety. The authorities holding the divergent views on the subject are collated in the note mentioned. We therefore deem it unnecessary to cite them here. We are of the view, notwithstanding anything in the former decision of the court, that we are in accord with the better rule, and the weight of authority, in holding that the failure of the owner and the contractor in this case to agree in advance on the value of extra work and materials, and to provide in writing for delays, as required by the contract, did not, in and of itself, work an absolute release of the appellant from its liability on the contractor's bond. (See *Siegel* v. *Hechler,* 181 Cal. 187, 190 [183 Pac. 664].)

[8] The conclusion we have reached brings us to a consideration of the question whether or not the failure of the owner and the contractor to observe the formalities relating to extra work and materials resulted in such extensive and material alterations as to amount to a departure from the original building contract, rather than a permissible modification of its details. The building contract provides that no work should be considered as extra unless a separate estimate in writing therefor should be submitted by the contractor to the supervising architect, and his signature ob-

tained thereto before its commencement. According to the evidence, Roberts, the contractor, was content in almost every case to accept the oral direction of the owner's architect, or her' building superintendent, in the matter of changes, alterations, or omissions, and in regard to extra work and materials. Such waiver of the written agreement concerning those matters did not in any way change the liability of the surety. As a practical matter, it appears from the evidence and the findings that appellant was not prejudiced by the failure, in some instances, to obtain the agreement in advance. The contractor was allowed and received a fair and reasonable compensation for all items of extra work. It is not contended, as we understand the record, that the cost to the owner, or the burden placed on the contractor, was any greater or any less by reason of the failure to observe the formalities concerning cost and delays, if any, than it would have been had those matters been reduced to writing. Consequently, the liability of the surety was just the same as though all the formalities had been strictly observed. (*Grafton* v. *Hinkley,* 111 Wis. 46 [86 N. W. 859, 863].)

[9]   There is a further clause in the contract that "should the contractor be obstructed or delayed in the prosecution or completion of work by the act, neglect, delay or default of the owner, or the architect, . . . then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid; but no such allowance shall be made unless a claim therefor is presented in writing to the architect within 24 hours of the occurrence of such delay. The duration of such extension shall be certified to by the architect, and his decision shall be final." In the absence of such a clause in the contract, the contractor could no doubt have claimed an extension for delays, if there were any, occasioned by the act of the owner in ordering extra work. (*Ward* v. *Haren,* 139 Mo. App. 8 [119 S. W. 446, 447].) The requirements for extra work were acts of the owner. The failure of the contractor to invoke the benefit of the clause of the contract, in case any delay was occasioned by such act of the owner, operated to waive any right to subsequently claim an extension on account of his being required to do such extra work. (*Hiller* v. *Daman,* 183 Mo. App. 315 [166 S. W. 869]; *Wagner Co.* v. *Cawker,* 112 Wis. 532 [88 N. W.

599]; *Curry* v. *Olmstead,* 26 R. I. 462 [59 Atl. 392]; *Ward* v. *Haren, supra.*) In *Wagner* v. *Cawker, supra,* the contractor sued on his contract. The owners, just as in this case, counterclaimed for damages for delay. In reply, the contractor alleged the delay was occasioned by the owners and their architects, by other contractors, and by changes and alterations made in the building. No claim for such delays was presented, as required by a clause in the contract like the one here. The court held that compliance with the delay clause was a condition precedent to the right of the contractor to claim an extension of time for the completion of the building. It being admitted that the work was not completed within the time limited by the contract, the owners were held entitled to damages for the delay.

[10] Another clause of the contract has a material bearing on the rights of the parties to this controversy. It is provided therein that, should any dispute or controversy arise respecting the true construction or meaning of any of the provisions of the contract, plans, or specifications, or as to what is extra work outside of the contract, or as to any payment to be made thereunder, or any matter or thing to be done or performed thereunder by either the owner or the contractor, or as to any omission, failure, or neglect on the part of either the owner or contractor, such controversy or dispute shall be determined and decided by the architect, and his determination or decision thereon shall be final and conclusive. On completion of the building, a controversy arose between the owner and the contractor respecting the extent and value of extras furnished at the request of the owner, and the claim of the contractor that, by reason of his having been compelled to do the extra work, he was entitled to an allowance of additional time, or an extension of the period within which he had contracted to complete the contract. All the matters were referred to the architect for the purpose of procuring a ruling and certificate from him as to the actual facts. The architect filed such a certificate, in which he certified the facts and his conclusions in detail and at length concerning the matters referred to him. The question of the effect of such a certificate, under the provisions of a contract like the one here, has been considered by this court in a number of cases. It is now well settled that, where the parties to a building contract, by its

terms, authorize the architect, as arbiter, to determine and
certify facts material to a proceeding under the contract,
the certificate of the architect, duly made, that the fact
exists, is conclusive upon the parties with respect to the
thing to be done, to which such fact relates, or as to which,
under the proceeding, it is to affect the rights of the parties.
Such certificate can be impeached only for fraud or for
gross mistake amounting to fraud. (*American-Hawaiian
Eng. Co.* v. *Butler,* 165 Cal. 497, 513 [Ann. Cas. 1916C, 44,
133 Pac. 280]; *Connell* v. *Higgins,* 170 Cal. 541, 552 [150
Pac. 769].)   In this case the trial court found that the archi-
tect acted in good faith, and in the exercise of a fair and
reasonable judgment, and as an impartial arbitrator between
the owner and the contractor.

In his certificate the architect certified all items of extra
work and their reasonable value.   Many items claimed by
the contractor were found to be included in the original
contract.   No serious complaint is made here concerning the
determination of the architect on those matters.   [11]   He
further found, however, and certified that, beyond one exten-
sion of thirty days, which appears to have been given, the
contractor was not delayed in the completion of the build-
ing by performance of any extras, or by any act, neglect,
delay, or default of the owner or the architect, or any other
contractor employed by the owner on the work, and also
that he was not entitled to have his claim for an extension
of time allowed by reason of any alterations, deviations
from, additions to, or omissions in the contract.   In view of
the binding force of the architect's unimpeached certificate,
we conclude that it was not error for the trial court to ex-
clude the evidence by which the appellant sought to show
that the delay in the completion of the building resulted
from, and was necessitated by the performance of extra and
additional work.

[12]   The second point made by appellant on this appeal is
that the court should not have entered a decree giving the
materialmen and laborers direct judgments against it for the
full amounts of their claims, when there remained in the
hands of the owner more than enough of the contract price
due the contractor to fully pay and discharge the liens.
So far as the relation of the lien claimants to the owner was
concerned, there being a valid contract, they could only

enforce their claims against the land on which the building was situated, and a personal judgment against the owner would have been erroneous. (*Builders' Supply Depot* v. *O'Connor*, 150 Cal. 265, 267 [119 Am. St. Rep. 193, 11 Ann. Cas. 712, 17 L. R. A. (N. S.) 909, 88 Pac. 982]; *Pacific Portland Cement Co.* v. *Hopkins*, 174 Cal. 251, 256 [162 Pac. 1016].) Roberts, the contractor, was personally responsible to the lien claimants, and appellant stood for him. (*Hammond Lumber Co.* v. *Willis*, 171 Cal. 565, 568 [153 Pac. 947].) The bond given by appellant to secure the payment for labor and materials is conditioned that the contractor shall pay, or cause to be paid, all claims against him for such labor or materials, and is expressly made to inure to the benefit of any and all persons who perform labor upon or furnish materials to be used in the work described in the contract between Roberts and Mrs. Spires, or any modification thereof. By section 1183 of the Code of Civil Procedure, and by the express stipulation in the bond, such persons are given a right of action to recover upon the bond against the contractor and his surety, *or either of them,* in any suit brought to foreclose liens which may be filed by such persons upon the property of the owner, or in a separate suit brought upon the bond. The claimants may recover in such action, or actions, the value of such labor done or materials furnished, not exceeding, however, in the aggregate the amount of the bond, which in this case was one-half of the contract price for the erection of the building. The obligation of the appellant is, therefore, to pay the lienholders in full, provided their claims do not exceed the penal sum of the bond, $95,000. (*Roystone Co.* v. *Darling,* 171 Cal. 526, 543 [154 Pac. 15].) The direct judgment against appellant and in favor of the lien claimants in the aggregate sum of $40,791.41 was, therefore, proper.

The judgment is affirmed.

Lawlor, J., Richards, J., Seawell, J., Shenk, J., Lennon, J., and Myers, C. J., concurred.